IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SE PROPERTY HOLDINGS, LLC,      *
                                *
      Plaintiff,                *
                                *
vs.                             *  CIVIL ACTION NO. 20-00297-KD
                                *
JASON DYKEN, *et al.*,          *
                                *
      Defendants.               *


## REPORT AND RECOMMENDATION

This case is before the Court on the motions to dismiss filed
by Defendants Renee Dyken, The Mortgage Doctor, LLC, Capital Mass
Ltd. Partnership, and the Sixth Sense Trust.  (Docs. 21, 23, 25,
27).  These motions, which have been fully briefed and are ripe
for resolution, have been referred to the undersigned for a report
and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local
Rule 72.2(c). Upon consideration of all matters presented, the
undersigned RECOMMENDS, for the reasons stated herein, that
Defendants' motions be DENIED, as set forth below.

### I. Background Facts[1]

Plaintiff SE Property Holdings, LLC ("SEPH") is an Ohio
limited liability company ("LLC") that is the successor by merger

_____

[1] For purposes of resolving Defendants' motions to dismiss, the
Court accepts as true the facts alleged in Plaintiff's complaint.

to Vision Bank. (Doc. 1, ¶1). SEPH commenced this diversity action on June 1, 2020, against Jason Dyken, his wife Renee Dyken, the Sixth Sense Trust (the "Trust"), The Mortgage Doctor, LLC ("Mortgage Doctor"), Capital Mass Limited Partnership ("Capital Mass"), and Midland National Life Insurance Company ("Midland"). (Doc. 1). SEPH alleges that Jason Dyken was a principal in a real estate project in Orange Beach, Alabama, known as "Bama Bayou;" that between 2005 and 2007, Vision loaned approximately 20 million dollars to Bama Bayou; and that Dyken personally guaranteed the loans. (Id. at ¶¶ 10-27). SEPH also alleges that the Bama Bayou project had financial difficulties almost from its inception and that, fearful of his liability in relation to the Bama Bayou loans, Jason Dyken, along with his wife, Renee, begin in 2007 to devise a scheme to protect his assets from SEPH. (Id. at ¶¶ 29-36). According to SEPH, the Dykens created the Sixth Sense Trust, for which they serve as the trustees and beneficiaries, in order to defraud Jason Dyken's creditors, including SEPH. (Id.). On or about February 14, 2007, the Dykens transferred their 98% ownership of Capital Mass to the Sixth Sense Trust, and a little more than a month later, they transferred their residence and beach house to the Sixth Sense Trust, and conveyed two parcels of property to the Mortgage Doctor. (Id.). The Bama Bayou project went into default in 2008, and a year later, Vision filed a collection suit in the Circuit Court of Mobile County, Alabama, against Jason Dyken based

on his guaranties of the loans.  A judgment was entered against Jason Dyken on November 20, 2019, in the amount of $6,169,347.80. (Id. at ¶ 28).

In the instant action, SEPH asserts the following claims: (Count One) Actual Fraudulent Transfer pursuant to Ala. Code § 8-9A-4(a) against all Defendants except Renee Dyken and Midland; (Count Two) Constructive Fraudulent Transfer pursuant to Ala. Code § 8-9A-4(c), against all Defendants except Renee Dyken and Midland; (Count Three) Constructive Fraudulent Transfer pursuant to Ala. Code § 8-9A-5(a), against all Defendants except Renee Dyken and Midland; (Count Four) Conspiracy to Defraud SEPH, against all Defendants except Midland;[2] (Count Five) Fraudulent Representation against Jason Dyken; (Count Six) Fraudulent Concealment against Jason Dyken; (Count Seven) Declaratory Judgment; and (Count Eight) Accounting and Declaratory Judgment.  (Id.).

As Defendants point out, all eight counts of SEPH's Complaint are generally based on alleged wrongful transfers made in an effort to protect the Dyken assets from creditors such as SEPH.  SEPH alleges that Jason Dyken's transfers constitute actual and constructive fraudulent transfers under the Alabama Uniform Fraudulent Transfer Act, codified at Ala. Code §§ 8-9A-1, *et seq*. ("AUFTA").  The only claim asserted against Defendant Renee Dyken,

---

[2] This is the only claim asserted against Defendant Renee Dyken.

who was not a guarantor, is a claim for conspiracy to defraud SEPH, asserted in Count Four. (Doc. 1, ¶¶ 29-36).

In response to Plaintiff's complaint, Defendants Renee Dyken, Mortgage Doctor, Capital Mass, and the Trust filed the instant motions to dismiss the complaint pursuant to Rule 9(b) and 12(b)(6), on the basis that SEPH has failed to allege facts with sufficient particularity to state a claim upon which relief can be granted and, further, that SEPH has failed to assert its claims within the time required by the applicable statutes of limitation. (Docs. 21, 23, 25, 27).

These motions have been fully briefed and are now ready for resolution.

## II. <u>Standard of Review</u>

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting <u>GSW, Inc. v. Long County</u>, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor

4

of the plaintiff.  St. George v. Pinellas County, 285 F.3d 1334,
1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state
a claim, the complaint "does not need detailed factual
allegations"; however, the "plaintiff's obligation to provide the
'grounds' of his 'entitle[ment] to relief' requires more than
labels and conclusions, and a formulaic recitation of the elements
of a cause of action will not do. . . . Factual allegations must
be enough to raise a right to relief above the speculative level
. . ., on the assumption that all the allegations in the complaint
are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007) (internal citations omitted).  The
plaintiff must plead "enough facts to state a claim that is
plausible on its face." Id. at 570.  Unless a plaintiff has
"nudged [his] claims across the line from conceivable to
plausible," the complaint "must be dismissed." Id.

"[U]nsupported conclusions of law or of mixed fact and law"
will not defeat a Rule 12(b)(6) motion for dismissal.  Dalrymple
v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Marsh v.
Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).
"[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not 'show[n]' — that the pleader is entitled to
relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting

Fed. R. Civ. P. 8(a)(2)). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

In addition, the Federal Rules of Civil Procedure provide that, in actions "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed. R. Civ. P. There is no rigid, inflexible, one-size-fits-all checklist for pleading fraud with particularity. See Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972-73 (11th Cir. 2007) ("While allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, we have acknowledged that alternative means are also available to satisfy the rule in substantiating fraud allegations.")(citations and internal marks omitted)(emphasis in original). The Eleventh

Circuit has emphasized that "[t]he application of Rule 9(b) ... must not abrogate the concept of notice pleading." <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation and internal quotation marks omitted).

Indeed, the Rule 9(b) particularity requirement "must be read in conjunction with Federal Rule of Civil Procedure 8's directives that a complaint need only provide a short and plain statement of the claim," and courts considering motions to dismiss for failure to plead fraud with particularity "should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading found in Rule 8." <u>Hill v. Morehouse Medical Associates Inc.</u>, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) (citations and internal quotation marks omitted); <u>see also</u> <u>Urquilla-Diaz v. Kaplan University</u>, 780 F.3d 1039, 1051 (11th Cir. 2015) ("Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b)."); <u>SE Prop. Holdings, LLC v. Saint Family Ltd. P'ship</u>, 2017 U.S. Dist. LEXIS 65727, *19, 2017 WL 1628898, *8 (S.D. Ala. May 1, 2017)(accord).

## III. <u>Analysis</u>

In their briefs in support of their motions to dismiss, Defendants Mortgage Doctor, Capital Mass, and the Trust argue that Counts One through Four of Plaintiff's complaint are due to be dismissed against them because: (1) the allegations in the complaint are insufficient to state a claim upon which relief can

be granted; and (2) the claims are time-barred by the applicable statute of limitations. (Docs. 24, 26, 28). Defendant Renee Dyken likewise argues that Count Four, the only count in which she is named, is due to be dismissed for failure to state a claim upon which relief can be granted and as time-barred. (Doc. 22).

In response, SEPH contend that the complaint is detailed and properly pleads fraudulent transfer claims against the "transferee entities" (Mortgage Doctor, Capital Mass, and the Trust) and a conspiracy claim against the transferee entities and Renee Dyken. (Doc. 35 at 4-5). Plaintiff further responds that the claims are not time-barred because the issue of timelines in this case turns on when SEPH discovered or should have discovered the facts constituting the alleged fraud, which is a matter of disputed fact that cannot be resolved on a motion to dismiss. (Id. at 13).

For the reasons that follow, the Court finds that Defendants' motions to dismiss are due to be denied, as set forth herein.

## A. <u>Statutory Fraudulent Transfer Claims (Counts One-Three)</u>

As stated, Defendants Mortgage Doctor, Capital Mass, and the Trust argue that Counts One through Three of Plaintiff's complaint, which assert statutory claims for actual fraudulent transfer under Ala. Code 8-9A-4(a), constructive fraudulent transfer under § 8-9A-4(c), and constructive fraudulent transfer under § 8-9A-5(a), must be dismissed because the allegations are not specific enough

to give Defendants fair notice of the grounds upon which any claim against them rests. (Doc. 24 at 5-6; Doc. 26 at 6; Doc. 28 at 7; Doc. 22 at 5). However, as set forth, *supra*, the complaint contains specific allegations that Jason Dyken personally guaranteed the Bama Bayou loans; that the project ran into financial difficulties soon after its inception; that Jason Dyken and his wife developed a scheme to shield his assets from creditors, including each specific transfer or conveyance that is alleged to be fraudulent; that Bama Bayou loans went into default; and that SEPH secured a judgment against Jason Dyken on November 20, 2019, in the amount of $6,169,347.80. (Id. at ¶¶ 10-28).

In addition, SEPH asserts that, in May 2007, Jason Dyken presented a personal financial statement to Vision falsely representing that he was the owner of his residence and beach house without disclosing the existence of the Sixth Sense Trust or the fact that those assets had been transferred to the Trust months earlier, and he falsely claimed to be owner of other assets that he did not own, including an R/V Park and an orthodontist building. (Id. at ¶¶ 37-39). According to SEPH, in April 2008, Jason Dyken presented another false financial statement to Vision, showing that he owned assets that he did not own and failing to disclose the existence of the Trust. (Id. at ¶ 40). SEPH alleges that Vision Bank relied upon the false financial statements and

continued to extend financing to Bama Bayou and extended the maturity dates on their loans. (Id. at ¶ 42).

It is further alleged that, when SEPH obtained a judgment against Jason Dyken in 2019, it commenced collection activities and conducted discovery into Jason Dyken's assets, and it was only then that SEPH discovered that Jason Dyken is likely insolvent; that he and his wife Renee Dyken had created the Sixth Sense Trust and named themselves as trustees and beneficiaries; and that Jason and Renee Dyken had transferred their 98% ownership of Capital Mass to the Sixth Sense Trust, had transferred their residence and beach house to the Sixth Sense Trust, and had conveyed two parcels of property to the Mortgage Doctor. (Id. at ¶ 31-51).

To state a claim for actual fraudulent transfer pursuant to AUFTA, it must be alleged that the transfer was made with the actual intent to hinder, delay, or defraud the creditor.[3] Ala. Code § 8-9A-4(a). Specifically, subsection § 8-9A-4(a) provides:

> (a) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

---

[3] It is well settled that "[t]he purpose of the AUFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach." SE Prop. Holdings, LLC v. Center, 2017 U.S. Dist. LEXIS 124708, *37, 2017 WL 3403793, at *13 (S.D. Ala. Aug. 8, 2017), order clarified, 2017 WL 11444622 (S.D. Ala. Nov. 13, 2017), and aff'd, 724 Fed. Appx. 927 (11th Cir. 2018)(citations and internal quotation marks omitted).

Section § 8-9A-4(b)[4] further provides that:

In determining actual intent under subsection (a), consideration may be given, among other factors, to whether:

(1) The transfer was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer was disclosed or concealed;

(4) Before the transfer was made the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

---

[4] The factors provided by the AUFTA in § 8-9A-4(b) to aid in determining actual intent to defraud are often referred to as the "badges of fraud," and they are provided "for courts to employ to determine the actual intent of *the transferor*." SE Prop. Holdings, LLC v. Judkins, 2020 U.S. App. LEXIS 23506, *10 n.8, 2020 WL 4280943, *4 n.8 (11th Cir. July 27, 2020)(citing Ala. Code § 8-9A-4(b))(emphasis added).

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Here, SEPH has alleged that Defendants Mortgage Doctor, Capital Mass, and the Trust received substantial assets from a debtor, Jason Dyken, after he guaranteed the repayment of millions of dollars in loans to his creditor, Vision/SEPH, on a project that was at financial risk almost from its inception; that the transfers were made with actual intent to hinder, delay, or defraud SEPH, as evidenced by Jason Dyken's misrepresentations in financial statements to Vision that he still owned the transferred assets, which in fact they had been transferred to artificial entities (*i.e.*, the movants herein) that Jason and Renee Dyken controlled; and that the assets ultimately were transferred to the Defendant Trust (the existence of which was undisclosed in the financial statements to Vision), rendering those assets unreachable by his creditors.[5]    Based on these detailed

---

[5] As SEPH points out, if it succeeds in proving that these transfers by Jason Dyken were actually or constructively fraudulent, then the transferee entities/movants are liable pursuant to §§ 8-9A-7 and 8-9A-8, which provide several non-exclusive remedies that a creditor can obtain against transferees. These remedies include avoidance of the transfer, attachment of the asset, appointment of a receiver, an injunction against further transfer or disposition (Continued)

allegations, as well as the allegations regarding the relationships among the Defendants, the transfers at issue, and the relevant time frame pleaded in the complaint, the Court finds that Defendants have been alerted to the precise misconduct with which they are alleged to have engaged in and that SEPH has sufficiently stated a claim for actual fraudulent transfer under § 8-9A-4(a). Cf. SE Prop. Holdings, LLC v. Saint Family Ltd. P'ship, 2017 U.S. Dist. LEXIS 65727, *19, 2017 WL 1628898, *8 (S.D. Ala. May 1, 2017)("Under any reasonable reading of the pleadings, SEPH has set forth the circumstances of the alleged fraud with particularity. Indeed, the Complaint alleges that John Saint guaranteed the repayment to plaintiff of millions of dollars in loans, then shifted the bulk of his own assets to family members and artificial entities that he controlled (*i.e.*, *the other defendants in this action),* after which he misrepresented to plaintiff that he still held those assets, all "in an effort to deprive SEPH of assets that could be used to pay the debts owed to SEPH by John Saint and the Saint Estate." . . . Based on the particular factual allegations (including allegations detailing

---

by the transferee, and a judgment against the transferee in the amount of the value of the transferred asset. Ala. Code §§ 8-9A-7 and 8-9A-8. A transfer is voidable even against a transferee who received the transferred asset from the debtor in good faith if the transferee did not pay reasonably equivalent value for the asset. Ala. Code § 8-9A-8(a).

the relationships among defendants, the transfers at issue, and the relevant time frame) pleaded in the Complaint, the Court readily finds that defendants have been alerted to the precise misconduct with which they are charged and are adequately protected against spurious charges of immoral and fraudulent behavior, which is the purpose of Rule 9(b)."）(emphasis added)).

Thus, Defendants' contention that the complaint lacks the particularity required by Rule 8 and Rule 9(b) in describing the fraudulent conduct at issue is not well taken.  Accordingly, Defendants' motion to dismiss Count One on this ground is due to be denied.

Next, in Counts Two and Three of the Complaint, SEPH alleges claims against Defendants Mortgage Doctor, Capital Mass, and the Trust for constructive fraudulent transfer under § 8-9A-4(c) and § 8-9A-5(a).  Alabama Code, § 8-9A-4(c)[6] provides:

> (c) A transfer made by a debtor is fraudulent as to a creditor, whether the

---

[6] See SE Prop. Holdings, LLC v. Center, 2017 U.S. Dist. LEXIS 124708, *63, 2017 WL 3403793, *25 (S.D. Ala. Aug. 8, 2017), *order clarified,* 2017 WL 11444622 (S.D. Ala. Nov. 13, 2017), and *aff'd,* 724 Fed. Appx. 927 (11th Cir. 2018)(noting that evidence that the transferor was engaged in ongoing loan transactions with Vision Bank for the Bama Bayou project during the relevant time period, including acting as guaranty on those loans, was sufficient to satisfy the element of "engaged in a business or a transaction" under § 8-9A-4(c), and the "unreasonably small formulation denotes a financial condition short of insolvency, where the challenged transfers leave the transferor technically solvent but doomed to fail.")(citations and internal quotation marks omitted).  Here, SEPH alleges that, as a result of the transfers, Jason Dyken was actually insolvent.  (Doc. 1, ¶¶ 46, 52).

creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:

> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

In addition, Alabama Code, § 8-9A-5(a) provides:

> (a) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

Here, as discussed, SEPH has alleged that, with knowledge of the risk of great personal liability as guarantor for millions of dollars of loan debt that Bama Bayou was obligated to repay to Vision, Defendant Jason Dyken fraudulently transferred significant personal assets to entities which he and his wife continued to own and control but which his creditors could not reach. Specifically, as discussed, SEPH alleges that, at the time of the transfers, Jason Dyken knew that he owed substantial sums of money to Vision/SEPH as a guarantor of Bama Bayou's loans; that as early as 2005, the Bama Bayou project began experiencing financial

difficultly; that Jason Dyken began transferring significant assets owned by himself and his wife to insiders; that Jason Dyken and his wife retained control and/or possession of all of their transferred assets; that Jason Dyken was insolvent at the time of the transfers or became insolvent as a result of the transfers; that the value of any consideration received by Jason Dyken was not reasonably equivalent to the value of the assets transferred; that the sum of Jason Dyken's debts was greater than the value of his assets as a result of the transfers; that the transfers were concealed from Vision/SEPH through Jason Dyken's intentional failure to disclose them and, in particular, through his false and fraudulent financial statements given to Vision; and that Vision/SEPH did in fact obtain a judgment in its collection action against Jason Dyken in 2019 for $6,169,347.80. (Doc. 1 at ¶¶ 17-28, 52-57). Based on these detailed allegations, as well as the allegations regarding the relationships among the Defendants, the transfers at issue, and the relevant time frame pleaded in the complaint, the Court finds that Defendants have been alerted to the precise misconduct which they are alleged to have engaged in, and that SEPH has sufficiently stated a claim for constructive fraudulent transfer under § 8-9A-4(c) and § 8-9A-5(a). Thus, Defendants' contention that the complaint lacks the particularity required by Rule 8 and Rule 9(b) in describing the fraudulent conduct at issue is not well taken. Accordingly, Defendants'

motion to dismiss Counts Two and Three on this ground is due to be denied.

### B. <u>Conspiracy Claim (Count Four)</u>.

In Count Four of the Complaint, SEPH brings a common law civil conspiracy claim against all Defendants, except Midland. (Doc. 1 ¶¶ 66-68). Defendants Mortgage Doctor, Capital Mass, the Trust, and Renee Dyken[7] argue that Count Four must be dismissed because the allegations are not specific enough to give Defendants fair notice of the grounds upon which any claim against them rests. (Doc. 22 at 8; Doc. 24 at 12; Doc. 26 at 11; Doc. 28 at 12).

"Under Alabama law, a civil conspiracy is a combination of two or more persons to do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful means." <u>SE Prop. Holdings, LLC v. Center</u>, 2017 U.S. Dist. LEXIS 124708, *76, 2017 WL 3403793, *30 (S.D. Ala. Aug. 8, 2017), *order clarified*, 2017 WL 11444622 (S.D. Ala. Nov. 13, 2017), *and aff'd*, 724 Fed. Appx. 927 (11th Cir. 2018)(quoting <u>DGB, LLC v. Hinds</u>, 55 So. 3d 218, 234 (Ala. 2010)(citations and internal quotation marks omitted)). "Such a claim requires proof of a concerted action by two or more people." <u>Id.</u> (quoting <u>Luck v. Primus Automotive Financial Services, Inc.</u>, 763 So. 2d 243, 247 (Ala. 2000) (internal quotation

---

[7] As stated, this is the only claim asserted against Defendant Renee Dyken.

marks omitted). "This, in turn, requires a showing that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." Id. (quoting First Bank of Childersburg v. Florey, 676 So. 2d 324, 327 (Ala. Civ. App. 1996)(internal quotation marks omitted). "In order to prove a conspiracy, a plaintiff may present circumstantial evidence." Id. (quoting Luck, 763 So. 2d at 247; and Eidson v. Olin Corp., 527 So. 2d 1283, 1285 (Ala. 1988)("By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence.")).

"It is well settled under Alabama law that [t]he essence of a conspiracy is an agreement, a meeting of the minds between the conspirators." Id. (quoting Jurich v. Compass Marine, Inc., 906 F. Supp. 2d 1225, 1235 (S.D. Ala. 2012)(citations and internal quotation marks omitted). In pleading a conspiracy claim, "a defendant must be informed of the nature of the conspiracy which is alleged." Saint, 2017 U.S. Dist. LEXIS 65727 at *22, 2017 WL 1628898 at *9 (quoting Shell v. United States Dep't of Housing and Urban Development, 355 Fed. Appx. 300, 307 (11th Cir. 2009)). "It is not enough to simply aver in the complaint that a conspiracy existed. . . . A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." Id. (citations omitted). However, "[a] great quantum

of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the scheme or undertaking engaged in." Id., 2017 U.S. Dist. LEXIS 65727 at *21 n.16, 2017 WL 1628898 at *9 n.16 (quoting O'Dell v. State ex rel. Patterson, 117 So. 2d 164, 168 (Ala. 1959); Ex parte Reindel, 963 So. 2d 614, 621 n.11 (Ala. 2007)("In a conspiracy, the acts of coconspirators are attributable to each other.")(citation omitted); Huckleberry v. M.C. Dixon Lumber Co., 503 So. 2d 1209, 1210-11 (Ala. 1987)("It is not an essential element of the claim that a particular conspirator commit an overt act in furtherance of the conspiracy.")).

In the complaint, SEPH alleges that Renee Dyken and the transferee entities (Mortgage Doctor, Capital Mass, and the Trust) intentionally assisted Jason Dyken in effecting his fraudulent scheme to place his assets out of the reach of his creditors. With respect to Renee Dyken, SEPH alleges that, at a time when Jason Dyken faced significant financial risk as a guarantor of millions of dollars of loans from Vision to Bama Bayou, Renee Dyken (Jason Dyken's wife) knowingly and intentionally assisted him in implementing a fraudulent scheme to place his substantial assets (some of which were joint/family assets with Renee Dyken) out of the reach of his creditors, namely, Vision; that Renee Dyken attended meetings with Jason Dyken and their attorneys for the purpose of assisting them in establishing a Trust (over which Jason

and Renee Dyken named themselves trustees and beneficiaries) and into which the Dykens transferred substantial joint and separate assets, rendering Jason Dyken's assets untouchable by his creditors. (Doc. 1, ¶¶ 30-38). Based on these detailed allegations, as well as the allegations regarding the relationships among the Defendants, the transfers at issue, and the relevant time frame pleaded in the complaint, the Court finds that Defendant Renee Dyken has been alerted to the precise misconduct with which she is being charged and that SEPH has stated a claim, at this stage of the litigation, for civil conspiracy against Renee Dyken.

With respect to Defendants Mortgage Doctor, Capital Mass, and the Trust (the transferee entities), SEPH alleges that these entities were pawns of Jason and Renee Dyken in effecting their fraudulent transfer scheme, which was to avoid Jason Dyken's liability for millions of dollars of loans by Vision Bank on which he was the guarantor; that the entities were knowing and active participants in the conspiracy through the acts of Jason and Renee Dyken, who owned and controlled them; that Jason Dyken owned 100% of the Mortgage Doctor, which he transferred to Capital Mass; that Jason and Renee Dyken owned 98% of Capital Mass, which they transferred to the Trust; and that Jason and Renee Dyken created, owned, and controlled the Trust, over which they named themselves settlors, trustees, and beneficiaries. (Doc. 1 ¶¶ 4, 29-36).

An entity such as a corporation, limited partnership, trust, or limited liability company "is a legal entity, an artificial person, and can only act through agents." Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So. 2d 360, 363 (Ala. 1995). Indeed, "their intent is the intent of the corporation." Id. "An action may be maintained against a corporation for damages caused by a conspiracy in which it participated" through its officers or agents. National Park Bank of New York v. Louisville & N.R. Co., 199 Ala. 192, 197, 74 So. 69, 72-75 (1917)("[W]here corporations are held for conspiracy, it must be averred and proven that the conspiracy was entered into by its agent or officer, and that by implied or express authority, such agent or officer was acting within the line and scope of his employment in the accomplishment of the business of the master; and that such agent or officer, as such, did an essential or necessary act which the conspiracy contemplated.")(citing cases).

Contrary to Defendants' suggestion, an action for civil conspiracy may be maintained against a transferee (such as movants herein) where the transferee had actual knowledge of, and the intent to bring about, the object of the conspiracy, *i.e.*, to engage in fraudulent transfers of the debtor's assets to the detriment of his creditors. See Center, 2017 U.S. Dist. LEXIS 124708 at *79, 2017 WL 3403793 at *31.

While perhaps not the model of clarity, SEPH has alleged in its complaint that Jason and/or Renee Dyken own and control the transferee entities and, as such, have the authority to act on behalf of those entities and in fact have acted for those entities to further their conspiracy to fraudulently transfer Jason Dyken's assets (some of which were joint/family assets) so as to place the assets beyond the reach of Jason Dyken's creditors, namely Vision. (Doc. 1 ¶¶ 4, 29-36). Based on these allegations, as well as the allegations regarding the relationships among the Defendants, the transfers at issue, and the relevant time frame pleaded in the complaint, the Court finds, at this stage of the litigation, that SEPH has sufficiently alleged a conspiracy claim against the Mortgage Doctor, Capital Mass, and the Trust, entities which the co-conspiring Dykens are alleged to own and/or control. Defendants' contention that they have not been alerted to the precise misconduct with which they are being charged and that the complaint lacks the particularity required by Rule 8 and Rule 9(b) in describing the fraudulent conduct at issue is not well taken. Accordingly, Defendants' motion to dismiss Count Four on this ground is due to be denied.

### C. **Statute of Limitations**.

Next, in their briefs, Defendants argue that Counts One through Four of the complaint are due to be dismissed as time-barred. Specifically, Defendants argue that SEPH's fraud claims

accrued on the date of the alleged transfers in 2007 and expired years before SEPH filed suit on June 1, 2020. (Doc. 22 at 11; Doc. 24 at 17; Doc. 26 at 17; Doc. 28 at 16). SEPH responds by invoking the "discovery rule." Specifically, SEPH argues that the applicable statutes of limitations did not begin to run until after SEPH discovered the fraudulent transfers, which was after SEPH obtained a judgment against Jason Dyken in 2019 and conducted post-judgment discovery. (Doc. 35 at 13-14). SEPH further argues that any question regarding when it should have discovered the fraudulent transfers requires the Court to settle issues of disputed fact, which is inappropriate on a motion to dismiss. (Doc. 35 at 13-21). The Court agrees.

As discussed, the present action was commenced on June 1, 2020. (Doc. 1). In the complaint, SEPH alleges that the fraudulent transfers occurred in early 2007 and that Jason Dyken concealed those transfers in fraudulent financial statements provided to Vision in 2007 and 2008. (Id., ¶¶ 29-51). SEPH further alleges that Vision/SEPH obtained a judgment against Jason Dyken on November 20, 2019, in the amount of $6,169,347.80, for breach of his guaranties on the loans to Bama Bayou; that, prior to obtaining the judgment, SEPH was unable to conduct discovery into Jason Dyken's assets; that, after obtaining the judgment, SEPH commenced collection activities, including investigation into probate court records and tax records; and that SEPH learned of the

transfers of the residence, the beach house, the two parcels of property, the Mortgage Doctor, and Capital Mass, and the creation of the Trust only after SEPH obtained its judgment against Jason Dyken in November 2019. (Id., ¶¶ 28, 43-51).

Under the AUFTA, claims (such as Count One herein) based on the *actual* fraudulent transfer of *real* property must be brought within ten years after the transfer, and claims based on actual fraudulent transfers of *personal* property must be brought within six years after the transfer was made. Ala. Code § 8-9A-9(1)-(2). Claims for *constructive* fraudulent transfer under Ala. Code §§ 8-9A-4(c) or 8-9A-5(a) of AUFTA (such as Counts Two and Three herein) must be brought within four years after the transfer, if the creditor's claim arose before the transfer was made. Ala. Code § 8-9A-9(3). A claim for civil conspiracy pursuant to Ala. Code § 6-2-38 (such as Count Four herein), must be brought within two years of its accrual. See Morris v. Ingram, 2019 U.S. Dist. LEXIS 80328, *15, 2019 WL 2571011, *5 (M.D. Ala. May 9, 2019), *report and recommendation adopted*, 2019 WL 2583018 (M.D. Ala. June 21, 2019)(citing Eaton v. Unum Group, 2015 WL 5306185, *4 (N.D. Ala. Sept. 10, 2015); Boyce v. Cassese, 941 So. 2d 932, 944 (Ala. 2006)).

Under well-settled Alabama law, "[i]n a fraud action, the running of the limitations period is tolled pursuant to the 'discovery rule' found in § 6-2-3, Ala. Code 1975." Target Media Partners Operating Co. v. Specialty Marketing Corp., 177 So. 3d

843, 862 (Ala. 2013). That statute provides that, "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3; see also DGB, LLC v. Hinds, 55 So. 3d 218, 224 (Ala. 2010) ("this statute is usually applicable to cases wherein fraud is the basis of the cause of action")(citation omitted). "The question of when a party discovered or should have discovered the fraud is generally one for the jury." Potter v. First Real Estate Co., 844 So. 2d 540, 546 (Ala. 2002)(citation omitted). This Court has recognized that fraudulent transfer claims brought under AUFTA are "subject to Alabama's discovery rule as codified at § 6-2-3." See Saint, 2017 U.S. Dist. LEXIS 65727 at *18, 2017 WL 1628898 at *7.

In the complaint, SEPH alleges that the fraudulent transfers at issue were concealed from Vision/SEPH by Jason Dyken and that, as a result of that concealment, SEPH did not discover the challenged transfers until after it obtained a judgment against Jason Dyken in November 2019 and began conducting post-judgment discovery. (Doc. 1, ¶¶ 43-51). Thus, SEPH argues, the limitations clock did not begin to run until sometime after November 2019, rendering the lawsuit timely.

Defendants have made a multitude of arguments as to why they believe SEPH should have discovered the fraud earlier than it did.

However, the Court agrees with Plaintiff that the analysis of the timeliness of this fraudulent transfer action, which involves a determination of when SEPH discovered or should have discovered the facts constituting the alleged fraud, is a matter dependent on facts that are in dispute and, as such, is inappropriate for consideration on a motion to dismiss. The Court finds that SEPH has adequately pleaded the discovery rule, which is sufficient to render Counts One through Four timely, at least for purposes of Rule 12(b)(6) review. Cf. Saint, 2017 U.S. Dist. LEXIS 65727 at *15, 2017 WL 1628898 at *6 (accord); see also McMillian v. AMC Mortg. Servs., Inc., 560 F. Supp. 2d 1210, 1213 (S.D. Ala. 2008)("A statute of limitations defense is generally not appropriate for evaluation on a Motion to Dismiss filed pursuant Rule 12(b)(6), Fed. R. Civ. P.;" "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."). Accordingly, Defendants' motions to dismiss on this ground are due to be denied.

## IV. Conclusion

For the reasons discussed herein, the undersigned hereby RECOMMENDS that Defendants' motions to dismiss Counts One through Four of the complaint (Docs. 21, 23, 25, 27) be DENIED.[8]

---

[8] In light of the instant report and recommendation, Defendants' motion to stay discovery is **DENIED.** (Doc. 43)

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **7th** day of **October, 2020.**

                          **/s/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**