IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRIE S. OWENS, Bankruptcy Trustee,    ) | |
|     Plaintiff,    ) | |
| ) | |
| vs.    ) | CIVIL ACTION 20-00297-KD-B |
| ) | |
| JASON DYKEN, *et al.,*    ) | |
|     Defendants.    ) | |

**ORDER**

This matter is before the Court on: **1)** certain Defendants' motion to refer this case to the United States Bankruptcy Court (Docs. 99), Defendant Jason Dyken's Joinder to refer (Doc. 103)), Trustee Terrie E. Owens' Response in Opposition (Doc. 102), SE Property Holdings, LLC's Joinder in Opposition (Doc. 105), the Defendants' Reply (Doc. 110), and SE Property Holdings, LLC (SEPH)'s Sur-Reply (Doc. 113); **2)** the motion to alter or amend the Order substituting the Trustee as the Real Party in Interest, filed by the Trustee and SEPH (Doc. 104);[1] and **3)** the parties' Status Report (Doc. 109).

**I.    Background**

On November 20, 2019, SE Property Holdings, LLC (SEPH) (previously Vision Bank) obtained a $6,169,347.80 judgment in state court against Defendant Jason Dyken (Mobile County Circuit Court Case No. 2009-900085) in a breach of contract action based in part on his personal continuing guaranty of approximately $20 million in loans to certain entities which defaulted. Specifically, the contractual litigation focused on the following four (4) Vision Bank loans which had defaulted and for which Defendant Jason Dyken was one of the guarantors: 1) a **March 24, 2005 loan** to Bama Bayou, LLC for $6 million for which Dyken guaranteed $315,000; 2) a **June**

---

[1] The opportunity to file a response/opposition was provided but none was filed.  (Doc. 114).

1

**12, 2006 loan** to Bama Bayou, LLC for $5 million for which Dyken guaranteed $280,000; 3) a **March 2, 2007 loan** to Marine Park, LLC for $5 million for which Dyken guaranteed $280,000; and 4) a **September 27, 2007 loan** to Bama Bayou, LLC for $5 million for which Dyken guaranteed to pay accrued interest on the other three (3) loans. (State Court Third Amended Complaint). Because Vision Bank merged with and into SEPH, SEPH was substituted for Vision Bank as the named party plaintiff in the state action. However, after that litigation commenced, SEPH assigned to another bank -- First National Bank (FNB) -- the Marine Park Loan and guaranties on that loan, as well as all claims arising out of the loan and guaranties, and so FNB was substituted for SEPH on the counts related to that loan and that loan's guaranties. (State Court Third Amended Complaint). The state court action was thus one for breach of contract.[2]

On June 1, 2020, SEPH initiated this federal tort litigation against certain Defendants (including Jason Dyken), alleging fraudulent transfers, fraudulent representation, fraudulent concealment, an accounting, declaratory relief, and damages. (Doc. 1). As summarized in the R&R (Doc. 54 at 2-3):

> SEPH alleges that Jason Dyken was a principal in a real estate project in Orange Beach, Alabama, known as "Bama Bayou;" that between 2005 and 2007, Vision loaned approximately 20 million dollars to Bama Bayou; and that Dyken personally guaranteed the loans ... SEPH also alleges that the Bama Bayou project had financial difficulties almost from its inception and that, fearful of his liability in relation to the Bama Bayou loans, Jason Dyken, along with his wife, Renee, begin in 2007 to devise a scheme to protect his assets from SEPH. ... the Dykens created the Sixth Sense Trust, for which they serve as the trustees and beneficiaries, in order to defraud Jason Dyken's creditors, including SEPH... February 14, 2007, the Dykens transferred their 98% ownership of Capital Mass to the Sixth Sense Trust, and a little more than a month later, they transferred their residence and beach house to the Sixth Sense Trust, and conveyed two parcels of property to the Mortgage Doctor... The Bama Bayou project went into default in 2008, and a year later,

---

[2] SEPH, at one point (after October 25, 2019), asserted fraud and promissory fraud against other defendants (not Dyken) in a Third Amended Complaint, it almost just as quickly dismissed those counts pursuant to Ala. Rules Civ. Proc. Rule 41(a)(2) and such were dismissed by the court. As such, fraud was not at issue in the state court litigation. (State Court Judgment).

2

> Vision filed a collection suit in the Circuit Court of Mobile County, Alabama, against Jason Dyken based on his guaranties of the loans. A judgment was entered against Jason Dyken on November 20, 2019, in the amount of $6,169,347.80. ...

Specifically, SEPH's federal Complaint asserts the following claims against the Defendants:

> 1) <u>Count One</u> -- actual fraudulent transfer per Ala. Code § 8-9A-4(a) (against Jason Dyken, Sixth Sense Trust, The Mortgage Doctor, and CMLP);[3]
>
> 2) <u>Count Two</u> -- constructive fraudulent transfers per Ala. Code § 8-9A-4(c) (against Jason Dyken, Sixth Sense Trust, The Mortgage Doctor, and CMLP);[4]
>
> 3) <u>Count Three</u> -- constructive fraudulent transfers per Ala. Code § 8-9A-5(a) (against Jason Dyken, Sixth Sense Trust, The Mortgage Doctor, and CMLP);[5]
>
> 4) <u>Count Four</u> -- conspiracy to defraud in relation to Counts One-Three (against Jason Dyken, Renee Dyken, Sixth Sense Trust, The Mortgage Doctor, and CMLP);
>
> 5) <u>Count Five</u> -- fraudulent misrepresentation (against Jason Dyken);
>
> 6) <u>Count Six</u> -- fraudulent concealment (against Jason Dyken);
>
> 7) <u>Count Seven</u> -- declaratory judgment regarding the Sixth Sense Trust (that the Court interpret the Trust agreement and declare that Jason Dyken's liability pursuant to his guaranties of loans to Bama Bayou and Marine Park qualifies as one of the "exemptions" from the protective features of the Trust and that the Trust is "to satisfy such liability from Trust assets"); and
>
> 8) <u>Count Eight</u> -- accounting and declaratory judgment (requesting an accounting of the transfers and premiums paid for Jason Dyken's life insurance policies, a determination of the rights and duties of SEPH, Midland, and Jason Dyken with

---

[3] "A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor."

[4] "A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

[5] "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer."

respect to his policy, a declaration that his policy is not exempt from collection or garnishment as it was funded by him with the intent to defraud his creditors.

(Doc. 1).

On January 8, 2021, defendant Jason Dyken filed a Suggestion of Bankruptcy based on the filing of his voluntary petition under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Alabama (21-bk-10038). (Doc. 76). Pursuant to 11 U.S.C. § 362, the Court ruled that such filing operated as an automatic stay of the case as to Defendant Jason Dyken only. (Doc. 77). On January 15, 2021 the parties sought clarification of the stay, requesting that the stay apply to all parties and claims, which was denied as no grounds in support were stated. (Docs. 78, 79). From January 28 to February 8, 2021, the parties renewed the motion to stay/clarify and sought a stay as to all parties and all proceedings. (Doc. 80, 82, 83). In so doing, SEPH described its case as follows:

> ... ... SEPH's collection efforts against Jason Dyken (now stayed) underlie all claims against all parties ... this action is due to be stayed in its entirety.
>
> ***
>
> ... Counts One, Two, and Three are for fraudulent transfer. The defendants to these claims (other than Jason Dyken) are the alleged transferees of the alleged fraudulent transfers by Jason Dyken. SEPH cannot prove that these defendants received fraudulent transfers without simultaneously proving that Jason Dyken made fraudulent transfers.
>
> Count Four is a claim for conspiracy to defraud. In Count Four, SEPH alleges that the other Defendants conspired to hinder, delay, or defraud Jason Dyken's creditors. SEPH cannot prove this alleged conspiracy without simultaneously proving that there were underlying fraudulent transfers or other fraudulent activity by Jason Dyken, who is now a Debtor in bankruptcy.
>
> ... Counts Five and Six are claims for fraudulent representation and fraudulent concealment that are alleged only against Jason Dyken and are stayed.
>
> ... Count Seven is a declaratory judgment claim seeking an adjudication that the assets of a trust are subject to collection by SEPH on the basis of its judgment against Jason Dyken. If SEPH prevails against the trust, it would be an act of collection against Jason Dyken, and such collection efforts are stayed.

4

> ... Count Eight is a claim for an accounting and a declaratory judgment alleged against Jason Dyken. Midland National Life Insurance Company is a nominal party to that claim because it is the company that holds the subject life insurance policy.
>
> ... SEPH refers the Court to precedent suggesting that this action should be stayed in its entirety – i.e., as to all claims against all parties ...

(Doc. 80). Likewise, certain Defendants characterized this action as one for fraudulent conveyances, within the exclusive purview of the Trustee. (Doc. 82).

On February 9, 2021, the Court stayed all proceedings as to all parties for 120 days (calculated from February 9, 2021). (Doc. 84). The Court also ordered the parties to file a status report by June 21, 2021. (Doc. 84).

On April 8, 2021, SEPH filed in the Bankruptcy Case an Adversary Complaint (the "Dischargeability Action") seeking a judgment that the debt owed by debtor Jason Dyken to SEPH is <u>not</u> dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6).

On May 18, 2021, the Trustee filed a motion to be substituted as the real party plaintiff in interest in this case in place of SEPH, citing Rule 17(a)(3) of the <u>Federal Rules of Civil Procedure</u>. In so doing, the Trustee notified the Court that Defendant debtor Jason Dyken's Chapter 7 bankruptcy proceeding remained pending and:

> ... It is well established that once a petition in bankruptcy is filed, the trustee has the exclusive right to bring suit to recover property fraudulently transferred by the debtor. ...
>
> ...Courts also agree that the filing of a bankruptcy petition stays a creditor's fraudulent conveyance action under 11 U.S.C. § 362(a), and that once the bankruptcy case is filed, fraudulent conveyance actions may only be prosecuted by the trustee.
>
> ***
>
> ... Pursuant to the foregoing legal authorities, the Trustee alleges that, as a result of the filing of the bankruptcy petition, she is now the real party in interest and the proper Plaintiff to prosecute the pending fraudulent transfer claims against the Defendants.

(Doc. 88). In granting the substitution on June 9, 2021, the Court noted: "It is well established that once a petition in bankruptcy is filed, the trustee in bankruptcy has the exclusive right to bring suit to recover property fraudulently transferred by a debtor." In re Clark, 374 B.R. 874, 876 (Bankr. M.D. Ala. 2007). See also SE Property Holdings, LLC v. Gaddy, CV 1:16-00332 (S.D. Ala. May 25, 2017) (staying fraudulent transfer action as to all defendants due to suggestion of bankruptcy filed by the alleged transferor and due to all parties' agreement to same). (Doc. 90). Thus, the Trustee was substituted as the real party in interest, in place of SEPH, as to all counts. (Id.) On June 21, 2021, the parties filed a status report indicating the bankruptcy proceeding remained active. (Doc. 94). In light of same, on August 16, 2021, the stay was reimposed for 120 days, and the parties were ordered to file Status Reports every 60 days thereafter. (Doc. 96).

On November 15, 2021, certain Defendants filed a motion to refer this case to the U.S. Bankruptcy Court because: "[t]he crux of this action is a complaint to recover fraudulent transfers, which causes of action are property of the bankruptcy estate and which certainly at the very least confer "related to" jurisdiction upon the Bankruptcy Court. Moreover, there is currently pending the Dischargeability Action ... that involves similar causes of action as the instant action ... judicial economy and efficiency further support the referral." (Docs. 99).

On November 18, 2021, the SDAL Bankruptcy Court lifted the stay, stating that while the fraudulent transfer claims belong to the estate so the Trustee can prosecute same under 11 U.S.C. §§ 323, 544, and 548 without violating the automatic stay, "[t]o the extent necessary, however, the court lifts the automatic stay to allow the trustee's fraudulent transfer claims to proceed in the district court case." (Doc. 103 at 6). The Bankruptcy Court noted further, that **SEPH** had filed an adversary proceeding in the Bankruptcy Court under Section 523, which **alleges** that debtor Jason Dyken's debt is excepted from discharge under Sections 523(a)(2)(A)-(B) and 523(a)(6) and that

its "**nondischargeability claims are** based on the claims it originally filed in the district court and are **intertwined with the fraudulent transfer claims** now taken over by the chapter 7 trustee[]" and that while trustee was substituted as the real party in interest on all claims in the district court, the trustee and SEPH assert that Counts 5 and 6 belong to SEPH not the bankruptcy estate. (Id. at 6-7 (emphasis added)). The Bankruptcy Court stated:

> This court believes that SEPH's claims and the trustee's claims should be litigated together in the interest of judicial economy and to avoid inconsistent results. In the adversary proceeding, SEPH contends (count one) that it has suffered nondischargeable extracontractual damages as a result of the same fraudulent transfers which are the subject of the district court suit. SEPH also contends (count two in the adversary proceeding) that the debtor submitted fraudulent financial statements to Vision Bank – the same as count five in the district court suit. The results of the district court case will clarify what needs to be done in the adversary proceeding. The district court case may moot the nondischargeability case altogether if the district court decides in favor of the debtor. If the district court rules against the debtor, its findings are likely to have preclusive effect in the nondischargeability action and will at least greatly simplify the issues. *See generally Grogan v. Garner*, 498 U.S. 279 (1991); *see also, e.g., In re Jones*, 611 B.R. 685, 693 (Bankr. M.D. Ala. 2020). Several defendants in the district court case, including the debtor, have demanded a jury; counsel for the trustee has said that the trustee is not agreeing to the motion to refer recently filed in the district court. *Cf., e.g., In re Taylor Agency, Inc.*, 281 B.R. 94, 99 (Bankr. S.D. Ala. 2001) (the existence of a right to a jury trial is a factor for the bankruptcy court in deciding whether to abstain).

(Id. at 7). The Bankruptcy Court then stayed SEPH's adversarial proceeding for SEPH to litigate the claims to conclusion in this Court (versus trying in the adversary proceeding to determine which of SEPH's claims might hypothetically be nondischargeable), including a request that any ruling/judgment by this Court in favor of SEPH and against debtor Jason Dyken (if applicable)

7

include findings on the elements of Bankruptcy Codes Section 523(a)(2) and (a)(6). (Id. at 7-8). On November 29, 2021, the Trustee filed a notice of the Bankruptcy Court's order. (Doc. 101).

On December 1, 2021, the Trustee filed an opposition to the certain Defendants' motion to refer the case to Bankruptcy Court. (Docs. 102, 105 (Joinder by SEPH)). Per the Trustee: "The Movants fail to address in the Motion whether the Bankruptcy Court would have jurisdiction to hear the claims in this case under Article III of the United States Constitution and mischaracterize the claims in this case. The Bankruptcy Court would not have jurisdiction to enter a final judgment in this action. Furthermore, the Bankruptcy Court has already indicated that the claims asserted in this action should be heard by this Court. Therefore, the Motion should be denied, and this Court should hear the claims in this action." (Id. at 1). The Trustee asserts further that:

> 1. Movants states that "all eight counts of the Complaint are generally based on alleged wrongful transfers made in an effort to protect the Debtor's assets from creditors such as SEPH." (Doc. 99, PageID.1170). However, in three of the counts, SE Property Holdings, LLC ("SEPH") did not seek to have fraudulent transfers set aside. Count Five is for fraudulent misrepresentation based on false financial statements submitted to SEPH's predecessor-in-interest Vision Bank, and Count Six is for fraudulent concealment related to the failure to disclose that Debtor no longer owned certain assets listed in his financial statements. (Doc. 1, PageID.14-16). Count Seven seeks a declaration that, should the fraudulent transfers to Sixth Sense Trust not be set aside, that the trust assets be used to satisfy Debtor's debt to SEPH as provided in the trust documents for Sixth Sense Trust. (Doc. 1, PageID.16-18). The Trustee believes that Counts Five and Six belong to SEPH and should be pursued by it, and not the Trustee. The Trustee also believes SEPH is entitled to pursue the claims in Count Seven separately from the Trustee. Once the fourteen-day stay of the Bankruptcy Court's order to lift the stay (see below) passes, SEPH and the Trustee will be filing with this Court a motion to alter or amend the Court's order substituting the Trustee as the real party in interest as to Counts Five, Six, and Seven.

8

(Id. at 2).  The Trustee added that the Bankruptcy Court has indicated its desire that this Court hear the claims in this action, which may have preclusive effect or greatly simplify the issues in the Bankruptcy Court.  (Id. at 3-4).

On December 2, 2021, debtor defendant Jason Dyken's filed a Joinder to the motion, in which he notes that the Trustee and SEPH agree that Counts Five and Six belong to SEPH, rather than the Trustee, and those counts are substantively realleged in the adversary proceeding which "supports the position that the district court action should be referred to the bankruptcy court and consolidated with the adversary proceeding." (Doc. 103).  Also on this date, defendant debtor Jason Dyken filed a motion to vacate or reconsider the Bankruptcy court's ruling allowing litigation to go forward in this Court.  (Doc. 103).

On December 3, 2021, the Trustee and SEPH filed a joint motion to amend the Trustee's substitution as the real party in interest in this case, so that the Trustee only remains substituted as to Counts One -- Four and Count Eight, also requesting that the Trustee may also pursue the estate's claims, if any, against the Sixth Sense Trust under Count Seven even though SEPH should also have standing to pursue this claim. (Doc. 104).  As grounds, Trustee/SEPH assert "the claims in this case do not solely include fraudulent transfer actions" because certain counts "do not involve the recovery of assets fraudulent transferred."  (Id. at 3).  Trustee/SEPH assert the Trustee should not have been substituted as Counts Five and Six, "which clearly belong to SEPH and do not involve the recovery of property on behalf of J. Dyken's bankruptcy estate."  (Id. at 4).

On December 14, 2021, the parties filed a Status Report indicating the Dyken bankruptcy case is still pending and that Dyken filed a motion to vacate or reconsider the Bankruptcy Court's Order granting SEPH and the Trustee relief from the automatic stay.  (Doc. 109 at 1).  The Report noted that a January 4, 2022 hearing was set on the matter.  (Id.)  Additionally, the report noted

that the Bankruptcy Court cancelled the pending trial date for the Adversarial Proceeding, stayed that case, and set it for a status hearing on February 15, 2022. (Id. at 2). On December 22, 2021, the certain Defendants filed a reply to the Trustee's opposition to its motion refer the case to the Bankruptcy Court (Doc. 110), and on January 7, 2022, SEPH filed a Sur-Reply thereto (Doc. 113).

Since then, however, on January 11, 2022, the Bankruptcy Court held a hearing and on January 12, 2022 ordered that Dyken's motion to vacate or set aside was denied. (Doc. 202 in the Bankruptcy Case). On February 7, 2022, this Court ordered any opposition to the Trustee/SEPH's joint motion to alter or amend the Trustee's substitution to be filed by February 15, 2022. (Doc. 114). To date, no opposition has been filed. On February 15, 2022, the Bankruptcy Court held a status hearing. (Doc. 205 in the Bankruptcy Case).

At present, pending before the Court are Defendants' motion to refer/transfer this case to the Bankruptcy Court (Docs. 99, 103) and the Trustee/SEPH's joint motion to alter or amend the order substituting the Trustee as to certain counts of the Complaint (Doc. 104).

## II.     **Motion to Alter/Amend Order Substituting Trustee** (Doc. 104)

Trustee/SEPH jointly seek to amend the Order substituting the Trustee as the party plaintiff for <u>all</u> counts in the Complaint, arguing that the Trustee should only remain substituted as to Counts One-Four and Count Eight, but that SEPH should be re-substituted for Counts Five-Seven. Essentially, that the Trustee remain the real party in interest as to the Alabama statutory fraud claims, conspiracy to defraud claim, and accounting/declaratory judgment claim related to the Midland policy, but that SEPH be replaced as the real party in interest for the Alabama common law claims of fraudulent concealment and fraudulent misrepresentation as well as for the Sixth Sense Trust declaratory judgment count.

As grounds, Trustee/SEPH argue that Counts Five through Seven do not involve fraudulent transfers of property or assets and so the Trustee cannot, as a matter of law, be the real party in interest as to those counts given that the Trustee's strong-arm powers are limited to such fraudulent transfers. Specifically, that Counts Five and Six "clearly belong to SEPH and do not involve the recovery of property on behalf of debtor J[ason] Dyken's bankruptcy estate[]" and "do not involve the recovery of assets fraudulent transferred[;]" and that Count Seven seeks -- as an alternative to the fraudulent transfer counts and under the assumption that the trust assets will *not* be returned to the debtor under those counts -- a finding that the trust documents of the Sixth Sense Trust allow said Trust's assets to be used to pay the judgment Jason Dyken owes. (Doc. 104 at 3-4). Upon consideration, the motion is **GRANTED**.[6]

### III. Motion to Refer/Transfer the Case to the Bankruptcy Court (Docs. 99, 103)

Defendants Renee Dyken, Sixth Sense Trust, the Mortgage Doctor, LLC, and Capital Mass Limited Partnership move to refer/transfer this case to the Bankruptcy Court arguing that: 1) the crux of this case is to recover fraudulent transfers, causes of action which are the property of the bankruptcy estate and confer "related to" jurisdiction to the bankruptcy court; 2) the dischargeability action[7] in the bankruptcy court involves similar claims; and 3) judicial economy and efficiency support referral. These defendants assert further that per the Standing Order in the SDAL, "[p]ursuant to 28 U.S.C. § 157(a), any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for this district[]" (*i.e.,* to refer the following bankruptcy matters: 1) cases under Title 11;

---

[6] The granting of the motion should not be considered a concurrence with the Trustee's assertion that the Trustee's strong arm powers are limited to fraudulent transfers.

[7] Through which SEPH seeks a judgment in the Bankruptcy Court that the debt owed is not dischargeable per Sections 523(a)(2)(A), (a)(2)(B), and (a)(6).

2) proceedings arising under Title 11; 3) proceedings arising in a case under Title 11; and 4) proceedings related to a case under Title 1). Defendants argue that courts should refer a case if two (2) conditions are met: 1) the proceeding is one that the court would, indeed, normally refer to the bankruptcy court under the Standing Order, and 2) the court would be unlikely to withdraw the reference in any event – either permissively, for cause, or because the opposing party could and would file a timely motion that would require withdrawal. 28 U.S.C. § 157(d). From this, these Defendants contend as follows:

> ... the causes of action that are the crux of the underlying action certainly relate to the Bankruptcy Case, as they involve allegedly fraudulent transfers made by the Debtor. Property of the estate includes any interest that a trustee recovers under 11 U.S.C. § 550...
> ***
> Because any property recovered pursuant to a fraudulent transfer action is property of the estate, the fraudulent transfer action itself is a claim of the estate ... this action is at the very least "related to" the Bankruptcy Case and the Bankruptcy Court certainly has jurisdiction over the causes of action in this matter. Under the Standing Order, referral is appropriate.
> ***
> In the present case, the underlying claims do not necessitate any consideration, much less "substantial and material" consideration, of other laws of the United States regulating organizations or activities affecting interstate commerce. Accordingly, mandatory withdrawal of the reference would not apply.
> ***
> ... relevant factors supports the referral of this matter to the Bankruptcy Court, as follows:
> a) First, several, if not all, of the claims in this matter appear to constitute core proceedings that the Bankruptcy Court should decide. 28 U.S.C. § 157(b)(2) ... "proceedings to determine, avoid, or recover fraudulent conveyances." See 28 U.S.C. § 157(b)(2)(H)...
>
> b) Second, judicial efficiency will be best served by referring this matter to the Bankruptcy Court ... the causes of action in this matter are very similar to the causes of action in the Dischargeability Action ...
>
> c) Third, uniformity in bankruptcy administration is best served by referring this matter to the Bankruptcy Court ... recoveries on fraudulent conveyance actions will result in distributions to creditors in the Bankruptcy Case ...

> d) Fourth, there is no risk of condoning forum shopping if this matter is referred. The Debtor availed himself of his right to file bankruptcy, which created a forum in the Bankruptcy Court to decide causes of action that are property of the estate.
>
> e) Fifth ... referring the matter will foster the economical use of the debtors' and creditors' resources ... corral all of the issues in one forum – the Bankruptcy Court.
>
> f) Sixth, having the Bankruptcy Court decide ... will ... expedite the bankruptcy process.
>
> g) Seventh, although these Defendants did make a jury demand, this demand will be withdrawn if the Court grants this Motion ...

(Doc. 99 at 4-7).

In response, the Trustee (joined by debtor Jason Dyken and SEPH) oppose the case being referred to the Bankruptcy Court and argue that: 1) the Bankruptcy Court lacks jurisdiction to hear the claims under Article III of the U.S. Constitution and/or to enter a final judgment on the fraudulent transfer claims (even if such are designed as core claims per Section 157(b)) pursuant to Stern v. Marshall, 564 U.S. 461 (2011) as expressed in In re McCallan, 599 B.R. 361, 366-367 (Bankr. M.D. Ala. 2016) as they seek "augmentation" of the estate versus a "restructuring" of the debtor-creditor relations and involve state law fraud claims belonging to SEPH and not the Trustee; 2) the defendants mischaracterize the claims (as three (3) counts do not seek to have fraudulent transfers set aside); 3) withdrawal of the reference would be appropriate such that referring the case in the first instance is inappropriate (uniformity/efficiency in the administration of bankruptcy law is not impacted by failing to refer, movants are trying to engage in form shopping by seeking referral, conservation of the parties' resources supports non-referral, facilitation of the bankruptcy process favors non-referral, the fraudulent transfer claims are not core proceedings per Stern and not all of the claims are such but involve common law fraud and concealment (again non-core), this Court has more familiarity with the claims than the Bankruptcy Court (judicial resources), the movants demanded a jury and per Fed.R.Civ.P. Rule 38(d) such demand cannot be withdrawn

13

without the parties' consent (and the Trustee does not consent), and prevention of delay supports non-referral); and 4) the Bankruptcy Court has indicated that the claims asserted in this action should be heard by this Court. (Doc. 102 at 1-10). In sum:

> The Bankruptcy Court has already chosen to stay the Dischargeability Action to allow this case to proceed to completion. The Bankruptcy Court has made its preference known. The Trustee does not consent to entry of a final judgment by the Bankruptcy Court, and therefore the Bankruptcy Court lacks jurisdiction to enter a final judgment. It would make no sense to refer the case to the Bankruptcy Court to make proposed findings of fact and conclusions of law for this Court to review. Instead, as favored by the Trustee and the Bankruptcy Court itself, this Court should hear the claims in this action. The stay has been lifted, and it is past time for this case to proceed in this Court.

(Id. at 11).

Defendants contend that the plaintiffs' arguments are misplaced because: 1) the claims are not Stern claims (the claims involve the same facts, transactions, and occurrences as will necessarily be litigated in the Dischargeability Action and involve the restructuring of debtor-creditor relations versus merely possible augmentation of the estate, and the defendants agree to the entry of final orders by the Bankruptcy Court); 2) SEPH and the Trustee have impliedly consented to entry of final orders and adjudication of the issues by the Bankruptcy Court on the claims; and 3) this Court can and should refer the case for non-final orders by the Bankruptcy Court. (Doc. 110 at 2).

Upon consideration that a jury trial has been demanded, the motion to transfer is **DENIED.**

**DONE** and **ORDERED** this the **20th** day of **April 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**