IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SE PROPERTY HOLDINGS, LLC,   *
*et al.*,                     *
                             *
     Plaintiffs,             *
                             *   CIVIL ACTION NO. 20-00297-KD-B
vs.                          *
                             *
JASON DYKEN, *et al.*,        *
                             *
     Defendants.             *

ORDER

Before the Court are Defendant Jason Dyken's motion to compel Plaintiff SE Property Holdings, LLC ("SEPH") to produce various Westlaw PeopleMap reports (Doc. 141), and SEPH's response in opposition (Doc. 143). Upon consideration of the parties' filings and the representations of counsel at the discovery conference conducted on October 20, 2022, the motion is **GRANTED** for the reasons set forth below.

I. BACKGROUND

In this action, SEPH contends that Jason Dyken and other individuals and entities engaged in fraudulent transfers to prevent Jason Dyken's poor investment in a failed real estate project from harming his family finances. (See Doc. 149). Jason Dyken has requested that SEPH produce Westlaw PeopleMap reports (on Jason and Renee Dyken) that attorney Nick Petricoff obtained on behalf of SEPH. (Doc. 141 at 3; Doc. 141-2 at 1). According

to Dyken, "PeopleMaps are a proprietary WestLaw product that show, among other things, information on a person's assets and transfers of real property.  Such reports are used by creditors to discover or verify assets." (Doc. 141 at 1).   Dyken contends that the PeopleMap reports are relevant because they reveal SEPH's knowledge of Dyken's financial state and the transfers at issue, many years before SEPH filed this action.  (Id. at 2).   Dyken further asserts that Westlaw cannot generate retroactive PeopleMap reports, so the PeopleMap reports in SEPH's possession are the only means of discovering that evidence.  (Id.).   Dyken also contends that, contrary to SEPH's assertions, the reports do not constitute attorney work product because they are third-party collected public records and were not generated in anticipation of litigation.  (Id. at 4).  Additionally, Dyken argues that even if the reports are deemed work product, SEPH did not properly assert an attorney/client or work product objection; thus, any privilege has been waived.  (Id. at 3-4).

In opposition, SEPH asserts that the PeopleMap reports at issue were obtained by Mr. Nicholas Petricoff, an attorney who was employed by Southeast Property Solutions, LLC ("SPS") at the time. (Doc. 143 at 1-2).  SPS provides legal representation to SEPH and other entities.  (Id. at 2).  SEPH contends that Mr. Petricoff obtained the Dyken PeopleMap reports during active litigation between SEPH and Dyken; however, there is no record that Mr.

2

Petricoff ever transmitted the reports to SEPH or its predecessor, Vision Bank.  (Id.).

## II. __STANDARD OF REVIEW__

Federal Rule of Civil Procedure 26(b)(1), which sets forth the general scope of discovery, provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under the Federal Rules of Civil Procedure, full discovery is strongly favored whenever possible.  Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013).  In a diversity case such as this one, federal courts apply state law to resolve claims of attorney-client privilege, but federal law to resolve claims of privilege under the work product doctrine.  Devs. Sur. & Indem. Co. v. Harding Vill., Ltd., 2007 U.S. Dist. LEXIS 49994, at *2, 2007 WL 2021939, at *1 (S.D. Fla. July 11, 2007); see also McClary v. Walsh, 202 F.R.D. 286, 290 (N.D. Ala. 2000) ("Because the rule of decision in this diversity case is supplied by Alabama state law, the law of privileges also comes from state law.").  Thus, unlike the attorney-client privilege, the work product

privilege is governed, even in diversity cases, by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3).  See Underwriters Ins. Co. v. Atlanta Gas Light Co., 248 F.R.D. 663, 667 (N.D. Ga. 2008) ("In this diversity action, the scope of the work product doctrine is determined by Rule 26(b)(3) of the Federal Rules of Civil Procedure."); U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 630 F. Supp. 2d 1332, 1336 (M.D. Fla. 2007) ("The attorney work product doctrine is determined based on federal law."); The Atrium on the Ocean II Condo. Ass'n, Inc. v. QBE Ins. Corp., 2007 U.S. Dist. LEXIS 74962, at *5-7, 2007 WL 2972937, at *2 (S.D. Fla. Oct. 9, 2007) (applying federal law to issues relating to the work product doctrine).

The attorney work product privilege provides a qualified immunity for materials prepared in anticipation of litigation by a party, an attorney, or other representatives of a party.  Hickman v. Taylor, 329 U.S. 495 (1947).  The privilege is rooted in the recognition "that 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'"  Cox v. Adm'r U.S. Steele & Carnegie, 17 F.3d 1386, 1421 (11th Cir. 1994) (quoting Hickman, 329 U.S. at 510), modified on reh'g on other grounds, 30 F.3d 1347 (11th Cir. 1994); see also United Kingdom v. United States, 238 F.3d 1312, 1321 (11th Cir. 2001) ("The work-product doctrine reflects the strong 'public policy underlying the orderly

prosecution and defense of claims.'"). That public policy has been codified and is set forth in Rule 26(b)(3), which provides, in pertinent part:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)-(B).

The party asserting the work product privilege bears the burden of establishing its application over the documents it seeks to protect. See Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 697 (N.D. Ga. 2007). The work product privilege "must be specifically raised and demonstrated rather than asserted in a blanket fashion." Id. at 698 (quotation omitted).

"Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as 'opinion work product.'" Cox, 17 F.3d at 1422. "Not even the

most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." Hickman, 329 U.S. at 510.

"A party must anticipate litigation *at the time* the documents were drafted for these protections to apply." Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 698 (S.D. Fla. 2007) (emphasis in original). "Materials or documents drafted in the ordinary course of business are not protected." Id.; see also Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Grp., 2004 U.S. Dist. LEXIS 22487, at *6, 2004 WL 5215191, at *2 (M.D. Fla. Sept. 10, 2004) ("The work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or that party's representative (including its attorney). . . . The work product doctrine was not intended to protect from general discovery materials prepared in the ordinary course of business[.]"). Ordinarily, therefore, one must focus on when the document was created, and why it was created. See, e.g., In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (citation omitted).

### III.   **ANALYSIS**

Dyken asserts that SEPH should have produced the PeopleMap reports in response to two of his production requests.  In Dyken's production request #4, he requested:

> All documents reviewed, consulted, examined, inspected or prepared by Vision with respect to the decision to lend, advance, loan, extend, renew, modify, seek to collect or file a lawsuit with respect to any of the four loans including but not limited to any analysis of the financial condition of the borrowers or any of the guarantors.

(Doc. 141 at 2; Doc. 143 at 4).  In Dyken's production request #8, he requested that SEPH produce "all documents concerning Vision's due diligence and/or analysis of the financial condition of any or all guarantors on any of the four loans from the inception date." (Doc. 141 at 3; Doc. 143 at 4).

As best the Court can discern, SEPH offered the following objection to both requests: "Objection on the grounds that this request is irrelevant, overly broad, unduly burdensome and outside the scope of discovery.  Subject to these objections, see production in the Bama Bayou case."  (Doc. 141 at 3).  SEPH also raised an attorney work product objection to production request #4, and it included in its privilege log three Westlaw PeopleMap reports regarding Jason Dyken and one report regarding Renee Dyken that were obtained by attorney Nick Petricoff between July 2010 and May 2013.  (Doc. 141 at 3; Doc. 141-4).

As a preliminary matter, the undersigned notes that SEPH asserts, and Dyken does not refute, that the parties were engaged in active litigation with each other when the subject Westlaw PeopleMap reports were generated by counsel for SEPH and/or its predecessor. (See Doc. 143 at 2).  In light of such, it is reasonable that the reports were obtained by counsel for use in active litigation and thus arguably qualify as attorney work product.  See Stanziale v. Career Path Training Corp. (In re Student Fin. Corp.), 2006 U.S. Dist. LEXIS 86603, at *46-47 (E.D. Pa. Nov. 29, 2006) (concluding that public documents collected by or on behalf of an attorney in anticipation of litigation, including FOIA results, FOIA requests, news articles, court documents and deposition transcripts, website reports, and Lexis/Nexis and asset searches about the defendant, constituted attorney work product).

Based on counsel's representations, the Westlaw-generated reports contain asset information regarding Jason Dyken and Renee Dyken that was obtained from public sources.  There is nothing before the Court that indicates that, apart from highlighting by Petricoff on one of the reports, the PeopleMap reports contain anything other than factual information.  Thus, this is not a situation in which "opinion work product," such as an attorney's mental impressions, conclusions, opinions, or legal theories, is implicated by production of the PeopleMap reports.  See

<u>Underwriters Ins. Co. v. Atlanta Gas Light Co.</u>, 248 F.R.D. 663, 670 (N.D. Ga. 2008) ("[T]he literal text of Rule 26(b)(3) and its interpretation by courts in this circuit suggest that the Rule provides an absolute bar to discovering the mental impressions of an attorney or representative."). Under these circumstances, Rule 26(b)(3) requires a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. <u>See</u> Fed. R. Civ. P. 26(b)(3)(A)(ii). The PeopleMap reports at issue here were generated between approximately ten and thirteen years ago. Dyken's counsel avers that the reports are necessary to shed light on when SEPH learned of the alleged fraudulent transfers, and that it is not possible to generate retroactive PeopleMap reports on Westlaw. Given that Dyken has raised a statute of limitations defense in this case, and the amount of time that has passed since the reports were initially generated, the undersigned is satisfied that Dyken has established a substantial need for the PeopleMap reports, and that the reports are not available as generated between 2010 and 2013. Accordingly, Dyken's motion to compel (Doc. 141) is **GRANTED**, and SEPH is **DIRECTED** to produce the reports no later than **January 6, 2023**.[1]

---

[1] With respect to the PeopleMap report that contains highlighting by Petricoff, SEPH must produce the underlying report in its

**DONE** this **5th** day of **January, 2023.**

                                        /s/SONJA F. BIVINS
                                UNITED STATES MAGISTRATE JUDGE

_____

entirety.   However, it may redact the attorney highlighting or
otherwise produce the report in a form that does not reflect which
portions of the report were highlighted by Petricoff.