IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, *et al.*, | * * * |
| Plaintiffs, | * * |
| vs. | * CIVIL ACTION NO. 20-00297-KD-B |
| JASON DYKEN, *et al.*, | * * * |
| Defendants. | * |

**ORDER**

This matter is before the Court on yet another discovery dispute between the parties. Plaintiffs seek the complete file of Douglass Lodmell, an attorney retained by Defendants Jason Dyken and his wife Renee Dyken, and the "Trust Protector" of the Sixth Sense Trust.[1] Defendants object to producing certain portions of the file. Counsel for the parties were afforded an opportunity to brief the issue, and a discovery conference was conducted on February 2, 2023, with counsel for all parties in attendance.

**I. BACKGROUND**

In this action, Plaintiffs contend that Jason Dyken and other individuals and entities engaged in fraudulent transfers, including transfers to the Sixth Sense Trust, to prevent Jason

---

[1] According to Plaintiffs, Mr. Lodmell is one of the nation's leading asset protection attorneys and created the Sixth Sense Trust for Defendants Jason and Renee Dyken. (Doc. 189 at 1-2).

Dyken's poor investment in a failed real estate project from harming his family finances. (See Doc. 149). In September 2020, Plaintiff SE Property Holdings, LLC ("SEPH") issued a subpoena to "Lodmell & Lodmell, P.C. Attn: Douglass Lodmell" requesting production of:

> [the] firm's entire file, including but not limited to all contracts, drafts, memos, legal research, notes, bills, attorney time entries, emails, letters and other correspondence, related to Jason Dyken, Renee Dyken, Sixth Sense Trust, Capital Mass Management, LP, Capital Mass Limited Partnership, and/or any entities or trusts owned or created by the foregoing individuals and/or entities.

(Doc. 187-2).

Mr. Lodmell initially objected to the production requests on the basis of the attorney-client privilege, while counsel for SEPH argued that any attorney-client privilege had been waived and the documents were thus discoverable. (Doc. 187-3 at 3-4). Subsequent thereto, counsel for Jason Dyken advised SEPH's counsel in an email dated November 19, 2020, that "we have decided to not assert the attorney-client privilege as to Lodmell." (Doc. 189-4 at 2). Counsel for Renee Dyken was also copied on the email. (See id.). Then, on December 2, 2020, Coletta Anderson, on behalf of the Lodmell firm, sent documents to SEPH's counsel via email and advised: "Client has waived attorney/client privilege - attached is the contents of file." (Doc. 187-3 at 2). No privilege log was submitted with the file. Later, counsel for Plaintiffs

discovered that not all documents that were responsive to the subpoena had been produced. (Doc. 189 at 2 & n.3). In particular, emails containing communications between the Dykens and Mr. Lodmell were not included in the Lodmell production. (See Doc. 189-1 at 11-12; Doc. 189-5).

During Jason Dyken's deposition in October 2022, his counsel acknowledged that the attorney-client privilege had been waived as to his client's discussions with Mr. Lodmell, and he then permitted Jason Dyken to answer questions regarding the creation and operation of the Sixth Sense Trust, and about advice received from Mr. Lodmell. (Doc. 189-7 at 24-34). At the deposition, counsel for Renee Dyken stated: "I want to be sure the scope" of the waiver; however, there was no objection to Jason Dyken providing testimony about his discussions with Mr. Lodmell regarding the Sixth Sense Trust. (See id.).

When Mr. Lodmell was deposed a few months later, counsel for Jason Dyken reversed course and took the position that Jason Dyken was withdrawing his waiver of the attorney-client privilege. (See Doc. 189-1 at 13-15). Jason Dyken's counsel asserts that "a waiver of the privilege may be withdrawn at any time during the same trial until it has been acted upon." (Doc. 186 at 3). According to Jason Dyken's counsel, the waiver that was provided at the time of the Lodmell document production in 2020 is not effective because no privileged communications were included with the Lodmell

production, and in any event, Jason Dyken has the right to withdraw the waiver as it relates to his communications with Mr. Lodmell. (Id. at 4-5).[2]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1), which sets forth the general scope of discovery, provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under the Federal Rules of Civil Procedure, full discovery is strongly favored whenever possible. Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013). In a diversity case such as this one, federal courts apply state law to resolve claims of attorney-client privilege, but federal law to resolve claims of privilege under the work product doctrine. Devs. Sur. & Indem. Co. v. Harding Vill., Ltd., 2007 U.S. Dist. LEXIS 49994,

---

[2] The issue of whether Renee Dyken has waived the attorney-client privilege was not initially raised with the Court. However, the issue was raised during the discovery conference, and counsel for Plaintiffs have now briefed the issue. Any reply by Defendants shall be filed by **February 17, 2023**.

at *2, 2007 WL 2021939, at *1 (S.D. Fla. July 11, 2007); see also McClary v. Walsh, 202 F.R.D. 286, 290 (N.D. Ala. 2000) ("Because the rule of decision in this diversity case is supplied by Alabama state law, the law of privileges also comes from state law.").

The general rule of attorney-client privilege under Alabama law is set forth in Rule 502(b) of the Alabama Rules of Evidence, which provides that:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client, (1) between the client or a representative of the client and the client's attorney or a representative of the attorney, or (2) between the attorney and a representative of the attorney, (3) by the client or a representative of the client or the client's attorney or a representative of the attorney to an attorney or a representative of an attorney representing another party concerning a matter of common interest, (4) between representatives of the client and between the client and a representative of the client resulting from the specific request of, or at the express direction of, an attorney, or (5) among attorneys and their representatives representing the same client.

Ala. R. Evid. 502(b).  "The purpose of the privilege is to encourage candid 'communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" Ex parte Great American Surplus Lines Ins. Co., 540 So. 2d 1357, 1358 (Ala. 1989) (citations omitted).  "It is a 'bedrock principle that the attorney-client privilege is the client's and his alone.  If the client wishes to waive it, the attorney may not assert it, either

5

for the client's or his own benefit.'" San Francisco Residence Club, Inc. v. Baswell-Guthrie, 897 F. Supp. 2d 1122, 1216 (N.D. Ala. 2012) (quoting United States v. Noriega, 917 F. 2d 1543, 1551 (11th Cir. 1990)).

Under Federal Rule of Evidence 502, the substantive scope of the attorney-client privilege is still a matter of state law; however, federal law governs the resolution of the question of whether a waiver of the attorney-client privilege has occurred. Id. at 1219.  Rule 502 provides that the waiver of the attorney-client privilege "extends to an undisclosed communication . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications . . . concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a)(1)-(3).[3]

### III. DISCUSSION

As discussed during the discovery conference conducted on February 2, 2023, the undersigned finds that Jason Dyken waived the attorney-client privilege with respect to his communications with Mr. Lodmell concerning the creation, use, and operation of the Sixth Sense Trust.  First, when the Lodmell file was produced

---

[3] Alabama Rule of Evidence 510 likewise provides that "[a] person upon whom these rules confer a privilege against disclosure waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Ala. R. Evid. 510.

6

to SEPH in 2020, Jason Dyken's counsel advised SEPH's counsel that Jason Dyken was waiving his attorney-client privilege with respect to his discussions with Mr. Lodmell.  At the time, Jason Dyken's counsel was keenly aware that the Lodmell file that was being produced <u>did not</u> contain any communications between Jason Dyken and Mr. Lodmell, even though such documents did in fact exist.[4]  Notwithstanding, no privilege log was tendered when the Lodmell file (absent the Jason Dyken/Lodmell communications) was produced.

Counsel for Plaintiffs did not learn of the existence of documents reflecting communications between Jason Dyken and Mr. Lodmell until 2022 in a related case.  (Doc. 189 at 2 & n.3).  As noted *supra*, at Jason Dyken's deposition in October 2022, Jason Dyken's counsel confirmed that Jason Dyken was waiving the attorney-client privilege with respect to Jason Dyken's communications with Mr. Lodmell, and with no objection from any of the defendants' attorneys, Jason Dyken was permitted to testify regarding his discussions with Mr. Lodmell, including advice and recommendations received from Mr. Lodmell regarding the Sixth Sense Trust.  (<u>See</u> Doc. 189-7 at 24-34).  During Mr. Lodmell's

---

[4] As noted supra, the September 2020 subpoena requested the Lodmell "firm's entire file, including but not limited to all contracts, drafts, memos, legal research, notes, bills, attorney time entries, *emails, letters and other correspondence, related to Jason Dyken*, Renee Dyken, Sixth Sense Trust, Capital Mass Management, LP, Capital Mass Limited Partnership, and/or any entities or trusts owned or created by the foregoing individuals and/or entities."  (Doc. 189-2 at 4).

7

deposition in January 2023, he too confirmed that it was his understanding that Jason Dyken had waived the attorney-client privilege with respect to their communications, and that he had in his possession emails reflecting discussions between him and Jason Dyken. (Doc. 189-1 at 8-9). Although Jason Dyken was permitted to testify during his deposition about his communications with Mr. Lodmell (see Doc. 189-7 at 24-34), counsel for Defendants objected to Mr. Lodmell offering testimony about the very same communications during his deposition. (See Doc. 189-1 at 13-17). While seemingly acknowledging that Jason Dyken had waived the attorney-client privilege as to discussions with Mr. Lodmell, Mr. Dyken's counsel advised during Mr. Lodmell's deposition that Mr. Dyken was withdrawing the waiver. (See id. at 13-15). Counsel for Jason Dyken has offered no facts or case authority that supports his position that Jason Dyken can waive the attorney-client privilege and reveal his discussions with Mr. Lodmell in defense of this fraudulent transfer action, and then withdraw the waiver so as to block the release of documents reflecting discussions between him and Mr. Lodmell, as well as deposition questions to Mr. Lodmell about the discussions between him and Jason Dyken. While the Court recognizes that any inquiry into the communications between an attorney and his client is a serious matter, to be undertaken only reluctantly and after careful deliberation, based upon the record before the Court, the

8

undersigned finds that Jason Dyken has affirmatively waived the attorney-client privilege with respect to his communications with Mr. Lodmell concerning the creation, use, and operation of the Sixth Sense Trust. Thus, his belated attempt to withdraw the waiver fails. See Baswell-Guthrie, 897 F. Supp. 2d at 1222 ("[I]t would be palpably unfair to permit [a party] to selectively waive some communications on the same subject matter while closely guarding others."); see also Hamilton v. Hamilton Steel Corp., 409 So. 2d 1111, 1114 (Fla. 4th DCA 1982) ("It is black letter law that once the privilege is waived, and the horse out of the barn, it cannot be reinvoked.").

Accordingly, to the extent Jason Dyken has not done so already, he is **DIRECTED** to produce to Plaintiffs' counsel, by **February 15, 2023**, any documents that reflect communications between Jason Dyken and Mr. Lodmell concerning the creation, use, and operation of the Sixth Sense Trust, and that were previously withheld on the basis of the attorney-client privilege.

At the discovery conference, counsel for Defendants also argued that some of the documents in the Lodmell file constitute attorney work product and are thus protected from discovery. While the referenced documents have been delivered to chambers at the Court's directive for an in camera review, briefing from the parties is necessary to aid the Court in its review of the documents. Accordingly, Defendants, as the parties who are seeking

9

to assert work-product protection, are **DIRECTED** to file a brief in support of their position. The brief shall not exceed ten (10) pages and shall be filed by **February 17, 2023.** Plaintiffs shall file a response, which shall not exceed ten (10) pages, no later than **February 28, 2023.**

For the reasons discussed during the discovery conference, the Court finds that this action may benefit from the use of special procedures to assist in resolving the dispute, such as mediation. The Court further finds that there are special procedures available in this District which will assist in securing the "just, speedy, and inexpensive determination" of the issues of this action. See Fed. R. Civ. P. 1. Accordingly, the Court **ORDERS** as follows:

1. The parties in this action are hereby **ORDERED** to engage in mediation in good faith pursuant to the procedures and principles set forth in the Alternative Dispute Resolution ("ADR") Plan for the Southern District of Alabama. The Court further **ORDERS** that the parties are to abide by the ADR Plan and are to fulfill the respective duties and obligations imposed upon them by said plan.

2. Within seven (7) days of the date of this order, the parties shall jointly select a mediator, who shall file a written acknowledgment that he or she will abide by this order and all provisions of the Court's ADR Plan.

3. The fee of the mediator shall be promptly paid in accordance with the parties' fee agreement with the mediator.

4. The mediator shall set the initial mediation conference with due regard to the schedules or other commitments of the parties and counsel and may continue or adjourn the mediation conference at the mediator's discretion, so long as the mediation process is completed by **March 31, 2023.**

5. The parties and their counsel are to be personally present for the mediation. In the case of a corporate or governmental entity, an authorized representative of the organization who has final settlement authority is to be present. Failure of any of the parties to attend the mediation conference absent leave of Court shall result in sanctions.

6. Within five (5) days of the conclusion of the mediation, the parties shall file a joint statement notifying the Court of the outcome of the mediation.

In light of the impending mediation, the deadline for dispositive motions (see Doc. 117 at 2) is **STAYED.**

**ORDERED** this **13th** day of **February, 2023.**

/s/SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**