## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TERRIE S. OWENS, Bankruptcy Trustee,     )
*et al.,*                                )
      **Plaintiffs,**                   )
                                         )
**vs.**                                  )      **CIVIL ACTION 1:20-00297-KD-B**
                                         )
**JASON DYKEN,** *et al.,*               )
      **Defendants.**                   )

### ORDER

This matter is before the Court on motions to dismiss filed by Defendant Renee Dyken "specially appearing as sole Trustee" of Defendant Sixth Sense Trust to dismiss Plaintiff SEPH's claims against the Trust (Doc. 223, 224), SEPH's Response (Doc. 235), and Renee Dyken's Reply (Doc. 244); and all Defendants' Motion to Dismiss Count Seven of the Second Amended Complaint (Doc. 237), Plaintiffs' Response (Doc. 248), Plaintiff's Notice of Issue Regarding Foreign Law (Doc. 234), and Defendants' Reply (Docs. 249, 250).

## I.    <u>Background</u>

On November 20, 2019, SE Property Holdings, LLC (SEPH) (previously Vision Bank) obtained a $6,169,347.80 judgment in state court against Defendant Jason Dyken (Mobile County Circuit Court Case No. 2009-900085) in a breach of contract action based (in part) on his personal continuing guaranty of approximately $20 million in loans to certain entities which defaulted.  Specifically, the contractual litigation focused on four (4) defaulted Vision Bank loans for which Defendant Jason Dyken was a guarantor: 1) a March 24, 2005 loan to Bama Bayou, LLC for $6 million -- Dyken guaranteed $315,000; 2) a June 12, 2006 loan to Bama Bayou, LLC for $5 million -- Dyken guaranteed $280,000; 3) a March 2, 2007 loan to Marine Park, LLC for $5 million -- Dyken guaranteed $280,000; and 4) a September 27, 2007 loan to Bama Bayou, LLC for $5

1

million -- Dyken guaranteed to pay accrued interest on the other three (3) loans. (State - Third Amended Complaint).  Because Vision Bank merged with/into SEPH, SEPH was substituted for Vision Bank as the plaintiff.  However, after that litigation commenced, SEPH assigned to First National Bank (FNB), the Marine Park Loan and related guaranties, as well as all claims arising out of the loan and guaranties.  In the state case, FNB was then substituted for SEPH on the counts related to the Marine Park loan and that loan's guaranties.  (State - Third Amended Complaint).

On June 1, 2020, SEPH initiated this federal litigation against the Defendants alleging that Jason Dyken was a principal in the Bama Bayou real estate project in Orange Beach, Alabama; between 2005-2007, Vision Bank loaned approximately $20 million to Bama Bayou; and Dyken personally guaranteed the loans. (Doc. 1). SEPH alleges the Bama Bayou project had financial difficulties and that fearful of his liability, Jason Dyken and his wife Renee Dyken devised a scheme in 2007 to protect his assets from SEPH, including the creation of the Sixth Sense Trust (in which they are trustees and beneficiaries) to defraud Jason Dyken's creditors (such as SEPH). (Id.) Per SEPH, the Dykens conducted a series of fraudulent transfers to avoid their debt obligations including: 1) a January 1, 2007 transfer of 100% of The Mortgage Doctor to Capital Mass Limited Partnership (CMLP);  2) the January 3, 2007 creation of the Sixth Sense Trust whose settlors, trustees, and beneficiaries are Jason and Renee; 3) a February 14, 2007 transfer of 98% of the ownership of CMLP to the Trust;  4) a March 22, 2007 transfer of certain assets to the Trust (Bear Creek Drive Gulf Shores, AL residence (Residence) and a home at West Beach Boulevard Gulf Shores, AL (Beach House)); 5) a March 22, 2007 conveyance to The Mortgage Doctor of two (2) parcels of real property in Baldwin County, Alabama; and 6) at "various times" the transfer of money into accounts purporting to be life insurance policies (Cash Transfers). (Id.)

SEPH asserts further, that Jason Dyken submitted two (2) fraudulent financial statements to the bank: 1) a May 10, 2007 financial statement (which showed him as the owner of the residence and beach house when the Trust owned those properties, failed to disclose the Trust, and falsely stated that he owned other assets including an R/V Park and orthodontist building); and 2) April 23, 2008 financial statement (which failed to disclose the Trust).  (Id.) Per SEPH, debtor Jason Dyken falsified these financial statements "so ... Vision would continue to fund the existing Marine Park Loan, continue to extend financing to Bama Bayou and Marine Park, and continue to work with Bama Bayou and Marine Park in connection with the Project."  (Id. at 8-9).

## II.    Motion to Dismiss Standard of Review

As summarized in Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009):

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544 ... the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 ... (citing *Papasan v. Allain,* 478 U.S. 265, 286 ... (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555..... Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, ... .

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, ..... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.... plausibility ... is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557 ... (brackets omitted)....

Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, ... (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal

conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556 ... . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Additionally, as to facial plausibility:

If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be denied. *Twombly*, 550 U.S. at 556 .... The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and internal quotation marks omitted).

Gulf Coast Mineral, LLC v. Tryall Omega, Inc., 2016 WL 344960, *1 (M.D. Ala. Jan. 27, 2016).

## III.   Sixth Sense Trust (Sixth Sense or Trust)

As note *supra*, SEPH alleges that Jason Dyken and his wife Renee Dyken devised a scheme in 2007 to protect his assets from SEPH, including the creation of the Sixth Sense Trust (in which they are trustees and beneficiaries) to defraud SEPH (and other creditors). This Trust is alleged to be an "international wealth management trust" governed by the law of Nevada and/or Belize with Jason and Renee Dyken as its settlors, trustees, and beneficiaries.  (Doc. 219; Doc. 234). The Sixth Sense Trust states that it is an irrevocable long-term trust, "domestic" per 26 U.S.C. § 7701(a)(30)(E), with primary supervision of its administration governed by and in accordance with the laws of the State of Nevada, and for "all other purposes" -- including jurisdiction to determine liability of the Trust -- it is to be construed, regulated, and governed by the laws of Belize.  (Doc. 234-1 at 2). The alleged scheme includes the claim that the Dykens transferred their 98%

ownership of Capital Mass, their residence, and their beach house, to the Sixth Sense Trust. Renee Dyken alleges now that she is the sole Trustee of the Trust.[1]

In the Second Amended Complaint, the Trustee asserts the following claims against the Sixth Sense Trust:

- Count One: Actual Fraudulent Transfer pursuant to 11 USC § 544(b) and Ala. Code § 8-9A-4(a) demanding judgment against Sixth Sense Trust et al.;

- Count Two: Constructive Fraudulent Transfer pursuant to 11 USC § 544(b) and Ala. Code § 8-9A-4(c), demanding judgment against Sixth Sense Trust et al.;

- Count Three: Constructive Fraudulent Transfer pursuant to 11 USC § 544(b) and Ala. Code § 8-9A-5(a), demanding judgment against Sixth Sense Trust et al.;

- Count Four: Conspiracy to Defraud pursuant to 11 USC § 544(b) and Alabama Common Law demanding judgment against Sixth Sense Trust et al.

SEPH asserts one claim, Count Seven, against the Sixth Sense Trust:

-a Declaratory Judgment seeking the interpretation of the Trust language and demanding "a monetary judgment be entered against the Sixth Sense Trust ...

(Doc. 219).

Presently, Sixth Sense Trustee Renee Dyken (specially appearing as she has not been served in her capacity as Trustee) moves to dismiss all of the claims asserted against the Trust pursuant to Fed.R.Civ.P Rule 12(b)(6) and Rule 17,[2] arguing that the Trust is not a separate legal

---

[1] Such is alleged on summary judgment presently as well: "[o]n January 10, 2020, Renee Dyken, as Trustee, and Douglass Lodmell, on behalf of the Protector of the Trust, executed a Directive from the Trustee of The Sixth Sense Trust removing Jason as a Co-Trustee of the Trust." (Doc. 265 at 12 at ¶23).

[2] Rules 17(a)-(b) address capacity, and provides:
.. (a) Real Party in Interest.
(1) *Designation in General.* An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express trust; (F) a party with whom or in whose name a contract has been made for another's benefit; and (G) a party authorized by statute.
                                                        ***
(b) Capacity to sue or be sued. Capacity to sue or be sued is determined as follows:

entity with the capacity to sue and be sued in its name but rather is a fiduciary relationship between multiple people. Sixth Sense argues that as such, the Complaint should have been brought against Renee Dyken as the Trust's Trustee.

In response, Plaintiffs argue:"[a]ll iterations of the Complaint have identified Renee Dyken as a trustee, and all parties to the trust (settlors, trustees, and beneficiaries) have always been parties to this case. Renee Dyken has directed the trust throughout the litigation. Sixth Sense Trust or Renee Dyken could have raised this issue at any time during the litigation. Instead, they answered pleadings, participated in discovery, indicated in filings and discovery that Sixth Sense Trust was an entity as well as the transferee, and provided discovery responses signed by Renee Dyken as Sixth Sense Trust's Trustee." (Doc. 235 at 3). Plaintiffs add that any arguments regarding the Trust lacking capacity to be sued, have thus been waived. Plaintiffs further requested that "due to the confusion Defendants have caused as to the proper transferee for the fraudulent transfer claims, leave be given" to file a Third Amended Complaint to "clarify[] that the term, 'Sixth Sense Trust,' means Sixth Sense Trust and Renee Dyken as Trustee of Sixth Sense Trust." (Id. at 3-4 at note 1). That subsequently filed motion was denied. (Doc. 236, 238). Nevertheless, per Plaintiffs, given the level of litigation in this case by Renee Dyken, "[t]here is no reason that Sixth Sense Trust cannot be *interpreted* by the Court *with all parties to the trust as parties* to the case." (Doc. 235 at 16 (emphasis added)).

---

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located, except that: (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and (B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

According to the Supreme Court (and as highlighted by Renee Dyken):

> In its simplest form, a trust is created when one person (a "settlor" or "grantor") transfers property to a third party (a "trustee") to administer for the benefit of another (a "beneficiary"). A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees § 1, pp. 8–10 (3d ed. 2007). As traditionally understood, the arrangement that results is not a "distinct legal entity, but a 'fiduciary relationship' between multiple people." *Americold Realty Trust* v. *Conagra Foods, Inc.*, 577 U. S. ——, ——, 136 S.Ct. 1012,.... (2016). The trust comprises the separate interests of the beneficiary, who has an "equitable interest" in the trust property, and the trustee, who has a "legal interest" in that property. *Greenough v. Tax Assessors of Newport*, 331 U.S. 486, 494, .... (1947). ...

North Carolina Dept. of Revenue v. The Kimberly Rice Kaestner 1992 Family Trust, 139 S. Ct. 2213, 2217-2218 (2019).  See also e.g., Carey v. Brown, 92 U.S. 171, 172 (1875) (citation omitted) ("The general rule is, that in suits respecting trust-property, brought either by or against the trustees, the *cestuis que trust* as well as the trustees are necessary parties[]"); Taylor v. Moskow, 717 Fed. Appx. 836, at 839 (11th Cir. 2017) (the real party in interest is the current trustee); Yocum v. Nationstar Mortg., LLC, 2017 WL 3668178, *9-10 (N.D. Ala. Aug. 24, 2017) (internal citation omitted) ("as to many of Plaintiff's claims, it appears the trustee of the ... Trust may be the real party in interest under Rule 17. If so, the trustee would have to be added as a party to this action. Regardless, the trustee is likely an indispensable party who must be joined pursuant to Rule 19[]" and "[g]enerally speaking, the trustee is an indispensable party[]'").

Additionally, this Court summarized the law in other jurisdictions regarding the capacity of trusts to sue or be sued in Eslava v. Gulf Telephone Co., Inc., 2006 WL 8437737, *3-4 (S.D. Ala. Jan. 30, 2006) (not applying Alabama law):

> A trust generally is not recognized as a separate legal entity with the capacity to sue or be sued in its own name. Rather, the trustee, as the legal holder of the trust property, is generally the real party in interest with the power to prosecute actions in the name of the trust pursuant to Rule 17(a). See e.g., Bogert, The Law of Trusts & Trustees § 247 (Rev. 2d ed.2005) (trust has no standing in law as a legally suable entity); see also 76 Am.Jur.2d Trusts, § 656 ("As a general rule, the trustee is the proper person to sue or be sued on behalf of a trust.")

.... majority of the .... jurisdictions that have addressed the issue have concluded that a trust is not a suable entity. See Randolph Foundation v. Appeal From Probate Court of Westport, 2001 WL 418059 (Conn. Super., April 3, 2001) (a testamentary trust is not a proper entity to commence litigation.); Coverdell v. Mid-South Farm Equipment Assn., Inc., 335 F.2d 9, 12 (6th Cir. 1964)(A trust cannot sue or be sued, but rather legal proceedings are properly directed at the trustee) (citing 1 Restatement (Second), Trusts § 2, p. 2 (1959); and 54 Am.Jur., Trusts §§ 570, 584, 586 and 588); Limouze v. M.M. & P. Maritime Advancement, Training, Education, and Safety Program, 397 F.Supp. 784, 789-90 (D. Md., 1975) (The defendant, an incorporated trust not registered as a business trust, was held to be an entity not capable of the being sued. "In the absence of statute or case law, the weight of authority is clear that the trust estate is not a person in the eyes of the law and does not have the capacity to be sued as an entity").

In Bonner v. Henderson, 147 F.3d 457 (5th Cir. 1998), the Fifth Circuit Court of Appeals, opined, in pertinent part:

> A legal entity is one that "has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations." An association-in-fact, on the other hand, is an ongoing organization with members functioning as a continuing unit. *A trust is neither a legal entity nor an association-in-fact. A trust is "a fiduciary relationship in which one person is the holder of the title to property subject to an equitable obligation to keep or use the property for the benefit of another."* Like a contract, which cannot be a legal entity enterprise for RICO purposes, it consists essentially of rights and duties between two or more parties. Unlike a corporation, which can be a legal entity enterprise for RICO purposes, it cannot litigate on its own behalf.

*Id*. at 459-460 (footnotes omitted)(emphasis added).

Further, "[a] 'traditional trust ... generally describes a fiduciary relationship regarding property where the trust cannot sue and be sued as an entity under state law.' So whether a trust is 'traditional' requires us to refer to the 'law of the state where the trust is formed[]'" Alliant Tax Credit 31, Inc v. Murphy, 924 F.3d 1134, 1143 (11th Cir. 2019).

Based on the foregoing, generally, trustees are the legal holders of trust property and real parties in interest with the power to litigate in the name of a trust. However, as to the Trust's capacity to sue and be sued *in this case*, Sixth Sense is governed by the laws of the State of Nevada

and/or of Belize.  Neither Renee Dyken nor Plaintiffs have briefed such law and the Court will not do so *sua sponte*.[3]  At most, the Court will note that in Nevada, "a trust may also be a party to a lawsuit through its trustee[]" <u>Nelson v. Eighth Judicial District Court in and for County of Clark</u>, 484 P.3d 270, 273 (Nev. Apr. 1, 2021) and "[i]t is the trustee, or trustees, rather than the trust itself that is entitled to bring suit[]" <u>Detwiler v. Eight Judicial District Court in and for County of Clark</u>, 486 P.3d 710, 716 (Nev. May 6, 2021).

Assuming *arguendo* that the Trust cannot be sued alone (a Trustee needs to also be added) and/or can only be sued via suit against its Trustees, the Court considers waiver.  Plaintiffs argue that the Trust (and Renee Dyken) waived the ability to raise a lack of capacity given the course of litigation to date.  Plaintiffs sued the Sixth Sense Trust.  Separately, Plaintiffs sued individual Renee Dyken, in her individual capacity.  Plaintiffs assert many allegations against Renee Dyken in relation to the Trust (including her status as a Trustee), but Renee Dyken has not been sued *officially* "in her capacity as a Trustee" for the Trust. And while Plaintiffs argue that neither Sixth Sense Trust nor Renee Dyken asserted in their answers a lack of capacity to sue or be sued via a "specific denial" (Fed.R.Civ.P. Rule 9) and so waived this defense, Plaintiffs confusingly (and simultaneously) *acknowledge* that <u>both</u> Sixth Sense Trust's and Renee Dyken's Answers assert:

> As the facts are not fully developed at this time, Defendant affirmatively pleads the following affirmative defenses which may be applicable in this action: ... **lack of capacity .....**

---

[3] Confusingly Plaintiffs argues Alabama law.  (Doc. 235 at 17-19). As noted in <u>Adderley v. Three Angels Broadcasting Network, Inc</u>., 2019 WL 7189887, *4 (S.D. Fla. Dec. 26, 2019):

> Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk." *Sideridraulic System SpA v. Briese Schiffahrts GmbH & Co. KG*,... 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011) (citations and quotations omitted). "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.). In short, the Court will not do parties' research for them. *Id."*

Defendant reserves the right to amend this pleading and to assert such additional affirmative defenses, counterclaims or crossclaims available at law or in equity as they determine appropriate as a result of their continuing investigation of the facts of this case which is incomplete at this time.

(Docs. 62, 63, 156, 157 (emphasis added)).

The determination as to whether a defense has been waived generally hinges on notice -- whether the answer or denial places the opposing party on notice of the defense. Clearly, Plaintiffs were on notice of a lack of capacity defense, as they highlighted such in their current briefing. Similarly, the sufficiency of the allegations of a complaint typically rests on notice -- whether they provided notice to the defendant of an allegation or claim against him/her, etc. The record in this case indicates that in all forms of Plaintiffs' complaints Renee Dyken has been repeatedly referenced as a "settlor, trustee, and beneficiary" of the Trust who "began planning and effecting a scheme and a series of transactions to shield and protect Jason's assets from SEPH[]" including "creat[ing] Sixth Sense Trust for the purpose of defrauding ....creditors[]" in January 2007 and transferring assts to the Trust in February and March 2007, into the Trust.  See, e.g., Doc. 219 at 8-9 (Second Amended Complaint)). The foregoing suggests that Renee Dyken has been sufficiently placed on notice of *the nature of the allegations* against her -- *i.e.*, that the actions she took regarding the Trust (as a settlor/trustee/beneficiary, its creation, transferring assets into same, etc.) are at issue in this case. As alleged, but for her status as a settlor, trustee, beneficiary of the Trust, she would not have been able to take such actions vis-a-vis the Trust.  Further, Plaintiffs suggest that if even if the Court finds that the Defendants did not waive the lack of capacity defense, leave should be granted to amend the complaint to name Renee Dyken as a Defendant in her capacity as Trustee of Sixth Sense Trust. In this instance, the Court is not persuaded that capacity has been waived and/or that all parties lacked any notice of this defense or assertion.

Rather, the Court finds the following persuasive:

> Having considered the record and the parties' arguments, I find that that the Plaintiff Trusts' claims should not be dismissed on the basis that the Plaintiff Trusts, rather than the trustee of the Plaintiff Trusts, brought this action ... Plaintiffs should be allowed to join or substitute the trustee of the Plaintiff Trusts ... a trust cannot litigate on its own behalf; rather, the trustee must assert claims on behalf of the trust as the real party in interest ...

> Plaintiffs do not contend that the rule is otherwise. Rather, Plaintiffs respond that, under Federal Rule of Civil Procedure 17(a), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." ... (citing, among other authority, Fed. R. Civ. P. 17(a)(1)(E) & (3)). .... Plaintiffs propose joining the trustee ... Furthermore, Plaintiffs contend that, to the extent that the Court finds the issue has not been waived, the Court should deny Defendant's request to dismiss the claims and allow joinder and/or substitution as contemplated by Rule 17 .... I agree. .... I do not recommend dismissal of the Plaintiff Trusts claims on the basis that the trustee for the Plaintiff Trusts did not bring this action on their behalf and ... recommend that the Court allow joinder and/or substitution pursuant to .... 17 if warranted.

Acheron Portfolio Trust v. Mukamal as Trustee of Mutual Benefits, 2021 WL 7368630, *13 (S.D. Fla. Sept. 24, 2021), *Report & Recommendation adopted by* 2022 WL 354241 (S.D. Fla. Feb. 7, 2022), *aff'd*, 2022 WL 17420869 (11th Cir. Dec. 6, 2022). Additionally, "the real party in interest principle is a means to identify the person who possesses the right sought to be enforced." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1542 (2009). See also Loewer v. New York Life Ins. Co., 773 F. Supp. 1518, 1523 (M.D. Fla. 1991) ("[T]he general rule is that a trustee is an indispensable party to an action affecting the corpus or assets of the trust, without whom the action cannot proceed[]").

As such, the Court will allow for joinder or addition of Renee Dyken, named in her capacity as a Trustee of Sixth Sense Trust, to the Second Amended Complaint. Thus, Renee Dyken's motion to dismiss in this regard is **DENIED.**

IV.   **Count Seven**

Defendants move to dismiss Count Seven of the Second Amended Complaint which is alleged only by SEPH, arguing that the Trustee has exclusive standing to pursue this claim.

A.   **Background**

In April 2021, SEPH filed an Adversary Complaint in Jason Dyken's Chapter 7 Bankruptcy Case (Dischargeability Action) seeking a judgment from the U.S. Bankruptcy Court (SDAL) that the debt owed by Jason Dyken to SEPH is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6). (Doc. 80).

In May 2021, the Chapter 7 Bankruptcy Trustee Terri Owens (the Trustee) filed a motion to be substituted as the real plaintiff in interest for <u>all</u> claims in this case -- in place of SEPH -- citing Rule 17(a)(3) of the <u>Federal Rules of Civil Procedure</u>.  In so doing, the Trustee asserted that Jason Dyken's Chapter 7 proceeding remained pending and:

> ... once a petition in bankruptcy is filed, the trustee has the <u>exclusive</u> right to bring suit to recover property fraudulently transferred by the debtor. ...
>
> ... the filing of a bankruptcy petition stays a creditor's fraudulent conveyance action under 11 U.S.C. § 362(a), and that once the bankruptcy case is filed, fraudulent conveyance actions may <u>only be prosecuted by the trustee</u>.
>
> ***
>
> ... the Trustee alleges that, as a result of the filing of the bankruptcy petition, she is now the real party in interest and the proper Plaintiff to prosecute the pending fraudulent transfer claims against the Defendants.

(Doc. 88 (emphasis added)).  In granting the substitution, ***which was unopposed by SEPH***, the Court noted: "It is well established that once a petition in bankruptcy is filed, the trustee in bankruptcy has the exclusive right to bring suit to recover property fraudulently transferred by a debtor." <u>In re Clark</u>, 374 B.R. 874, 876 (Bankr. M.D. Ala. 2007). <u>See</u> <u>also</u> <u>SE Prop. Hldgs, LLC v. Gaddy,</u> CV 1:16-00332 (S.D. Ala. May 25, 2017) (staying fraudulent transfer action as to all defendants due to suggestion of bankruptcy filed by the alleged transferor and due to all parties'

agreement to same).  (Doc. 90).  Thus, the Trustee was substituted as the real party in interest, in place of SEPH, as to <u>all</u> counts.  (<u>Id</u>.)

On November 18, 2021, the SDAL Bankruptcy Court lifted the stay.  (Doc. 101).  In so doing, the Bankruptcy Court explained that while the fraudulent transfer claims belong to the estate so the Trustee can (already) prosecute same under 11 U.S.C. §§ 323, 544, and 548 without violating the automatic stay, "[t]o the extent necessary ... the court lifts the automatic stay to allow the trustee's fraudulent transfer claims to proceed in the district court case."  (<u>Id</u>. at 2).  The Bankruptcy Court noted further, that SEPH had filed an Adversary Proceeding in the Bankruptcy Court under Section 523 alleging that debtor Jason Dyken's debt is excepted from discharge under Sections 523(a)(2)(A)-(B) and 523(a)(6), *SEPH's "nondischargeability claims* are based on the claims it originally filed in the district court and *are intertwined with the fraudulent transfer claims now taken over by the chapter 7 trustee[,]*" and while the Trustee was substituted as the real party in interest on all claims in the district court case, the Trustee and SEPH now assert that certain counts belong to SEPH alone.  (<u>Id</u>. at 2-3). Per the Bankruptcy Court:

> This court believes that SEPH's claims and the trustee's claims should be litigated together in the interest of judicial economy and to avoid inconsistent results. In the adversary proceeding, SEPH contends (count one) that it has suffered nondischargeable extracontractual damages as a result of the same fraudulent transfers which are the subject of the district court suit. SEPH also contends (count two in the adversary proceeding) that the debtor submitted fraudulent financial statements to Vision Bank - the same as count five in the district court suit. The results of the district court case will clarify what needs to be done in the adversary proceeding. The district court case may moot the nondischargeability case altogether if the district court decides in favor of the debtor. If the district court rules against the debtor, its findings are likely to have preclusive effect in the nondischargeability action and will at least greatly simplify the issues. *See generally Groga11 v. Gamer,* 498 U.S. 279 (1991); *see also, e.g., In re Jones,* 611B.R.685, 693 (Bankr. M.D. Ala. 2020). Several defendants in the district court case, including the debtor, have demanded a jury; counsel for the trustee has said that the trustee is not agreeing to the motion to refer recently filed in the district court. *Cf., e.g., In re Taylor Agency, Inc.,* 281 B.R. 94, 99 (Bankr. S.D. Ala. 2001)

(the existence of a right to a jury trial is a factor for the bankruptcy court in deciding whether to abstain).

As a result, rather than trying to determine in the adversary proceeding which of SEPH's claims might hypothetically be nondischargeable, the court will stay that proceeding by separate order in favor of the district court case so that the underlying claims can actually be litigated to conclusion. *See SuVicMon Dev., Inc. v. Morrison,* 991F.3d1213, 1221 n.5 (11th Cir. 2021); *also generallv In re Gaddy*, 977 F.3d 1051 (I1th Cir. 2020). The court also Jifts the automatic stay to allow SEPH to pursue in the district court case its claims against the debtor to final judgment (but not to collection, which must occur in this court). If SEPH chooses not to participate in the pending district court case, the court may consider that SEPH has waived its § 523 claims.

If possible, the court requests that any judgment entered by the district court in favor of SEPH against the debtor (if applicable) include findings on the elements of Bankruptcy Code § 523(a)(2) and (a)(6). *See, e.g., In re Cochran,* No. 18-14-JCO, 2019 WL 4072846, at *4 (Bankr. S.D. Ala. Aug. 28, 2019).

(Id. at 3-4). Thus, the Bankruptcy Court stayed SEPH's Adversary Proceeding for SEPH to litigate the claims to conclusion in this Court.

In the Trustee's related contemporaneous briefing on the motion to refer this case to the bankruptcy court (Doc. 99) (with joinder by SEPH), the Trustee asserted that all counts alleged in this case are generally based on the alleged wrongful transfers made to protect debtor assets from creditors such as SEPH; however, in Count Seven SEPH does not seek to have the fraudulent transfers set aside. (Doc. 102, 105 (joinder)). Per the Trustee: "Count Seven seeks a declaration that, should the fraudulent transfers to Sixth Sense Trust not be set aside, that the trust assets be used to satisfy Debtor's debt to SEPH as provided in the trust documents for Sixth Sense Trust ... The Trustee ... believes SEPH is entitled to pursue the claims in Count Seven separately from the Trustee...."  (Doc. 102 at 2).

In December 2021, the Trustee and SEPH filed a joint motion to amend the Trustee's prior substitution as the real party in interest and Plaintiff in this case as to all counts, so that the Trustee only remains the plaintiff as to Counts One, Two, Three, Four, and Eight, but simultaneously

14

asserting that the Trustee may ALSO pursue the estate's claims, if any, against the Sixth Sense Trust under Count Seven even though SEPH should have standing to pursue this claim. (Doc. 104). The Trustee and SEPH jointly moved for the Court to substitute SEPH for the Trustee for certain counts including Count Seven, stating the "Trustee was improperly substituted as the real party in interest" as to same. (Doc. 104). As grounds, Trustee/SEPH asserted "the claims in this case do not solely include fraudulent transfer actions" because certain counts "do not involve the recovery of assets fraudulent transferred." (Id. at 3). Trustee/SEPH argued (in part) that Count Seven does not involve fraudulent transfers of property/assets and the Trustee's strong-arm powers are limited to such fraudulent transfers. In other words, that Count Seven seeks -- as an alternative to the fraudulent transfer counts *based on the assumption that the trust assets will not be returned* to the debtor under those other counts -- a finding that the trust documents of the Sixth Sense Trust allow its assets to be used to pay the state court judgment Jason Dyken owes to SEPH. (Doc. 104 at 3-4). Per the Trustee/SEPH: "Presumably the Trustee could pursue claims under Count Seven on behalf of J. Dyken's other creditors, but such would not be fraudulent conveyance actions ... both SEPH and the Trustee .... have standing to pursue the claims under Count Seven." (Id. at 3-4).

In August 2022, Plaintiffs moved to amend the complaint. (Doc. 119). In so doing, again, SEPH and the Trustee again admitted (in part): "***the Trustee may also be an interested party as to Count Seven***. The Movants desire to amend the Complaint in part to reflect the Trustee's substitution as the real party in interest[.]" (Doc. 119 at 3 (emphasis added)). The motion was again unopposed, and was granted in December 2022, and subsequently Plaintiffs' First Amended Complaint was docketed. (Docs. 146, 149). Count Seven was alleged only on behalf of SEPH. (Id.) In response, in January 2023, Defendants moved to dismiss arguing that the First Amended Complaint's Count Seven was alleged only by SEPH but the Trustee (via the authorized strong

arm powers) has exclusive standing to pursue Count Seven.  (Doc. 171).  SEPH replied, arguing that Count Seven is specific to SEPH and the Trustee "does not have standing to pursue this claim" because this claim involves "only SEPH's debts and not any other debts of Jason."

In February 2023, the Trustee and SEPH moved to again amend the complaint to correct certain jurisdictional allegation deficiencies (Doc. 200) (in response to a separate motion to dismiss filed by the Defendants and as noted in the U.S. Magistrate Judge's Report and Recommendation regarding said motion (Doc. 197)). Included in the motion, SEPH and the Trustee asserted (in part): "the alleged misrepresentations and suppressions involve some of the same assets that were transferred into the Sixth Sense Trust. Thus, ***the claims asserted by SEPH in Count[] ...  Seven are a part of the same case or controversy as the Trustee's claims***."  (Doc. 200 at 9 (emphasis added)). In March 2023, the motion was granted. (Doc. 218). Thereafter, the Second Amended Complaint was filed, in which again, only SEPH alleges Count Seven. (Doc. 219).

The Second Amended Complaint alleges on behalf of the Trustee, actual fraudulent transfer (11 U.S.C. § 544(b) and Ala Code § 8-9A-4(a)) (Count One), constructive fraudulent transfer (11 U.S.C. § 544(b) and Ala Code § 8-9A-4(c)) (Count Two), constructive fraudulent transfer (11 U.S.C. § 544(b) and Ala Code § 8-9A-5(a)) (Count Three), conspiracy to defraud (11 U.S.C. § 544(b) and Alabama common law) (Count Four), and an accounting and declaratory judgment (11 U.S.C. § 544(b) and Alabama common law) (Count Eight); and on behalf of SEPH, fraudulent representation (related to the financial statement) (Count Five), fraudulent concealment (related to the financial statement) (Count Six), and a declaratory judgment (Count Seven). (Doc. 219). Specifically, in Count Seven SEPH alleges as follows:

> The trust agreement creating Sixth Sense Trust provides that its assets are to be used to satisfy certain liabilities of the settlors, notwithstanding any other aspects of the Trust or any protective features of the Trust ...

*** 

16

> ...Trustee and the Protector of this Trust are instructed not to resist an order by a court of competent jurisdiction, including a court in which an Event of Duress may have occurred, in the following limited circumstances, which will be considered "exemptions" from the protective features of this Trust: ... In the event that a Settlor of this Trust has voluntarily incurred a liability or debt, or guaranteed a debt of a third party, regardless of when the liability was incurred ...

Jason voluntarily guaranteed debts of third parties Bama Bayou and Marine Park.

Jason's liability pursuant to his guaranties of Bama Bayou and Marine Park's debt is undisputed and has been reduced to judgment in the Collection Lawsuit. Jason has not appealed the Judgment.

Pursuant to the trust agreement, the "protective features" of Sixth Sense Trust do not apply to SEPH's Judgment for breach of contract against Jason.

Pursuant to the trust agreement, assets of the Sixth Sense Trust are to be used to satisfy certain liabilities, including Jason's liability pursuant to his guaranties of Bama Bayou and Marine Park's debt.

Jason ... has taken the position that assets held by Sixth Sense Trust are protected from collection.

A declaratory judgment is necessary and proper so that the rights, duties, and obligations of the parties can be determined under the applicable provisions of the trust agreement.

***SEPH*** is entitled to a declaratory judgment in its favor in order to resolve this actual controversy among the parties, and ***it specifically requests a judicial declaration that*** the protective features of Sixth Sense Trust do not apply to SEPH's Judgment for breach of contract, ***and the assets of the Sixth Sense Trust are to be used to satisfy the Judgment.***

(Doc. 219 at 18-19 (emphasis added)).[4]

---

[4] SEPH bases jurisdiction for Count Seven on the following: "This Court has jurisdiction over Count[] ... Seven ...pursuant to 28 U.S.C. § 1334(b) because SEPH's claims are related to a proceeding under the Bankruptcy Code. Alternatively, the Court has jurisdiction over Count[] ... Seven .... pursuant to 28 U.S.C. § 1367. Alternatively, in the event the Trustee's claims are dismissed for any reason, the Court would have jurisdiction over Count[] .... Seven ... pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of costs and interest, and because there exists complete diversity of citizenship between SEPH and the Defendants." (Doc. 219 at 3 at ¶9).

### B.   Discussion

Defendants move to dismiss Count Seven of the Second Amended Complaint asserted by SEPH.  (Doc. 237). Defendants contend that the Trustee -- not SEPH -- has exclusive standing to pursue Count Seven.   SEPH opposes the motion, arguing that Count Seven does not belong in Jason Dyken's bankruptcy estate and cannot be asserted by the Trustee because it is "specific to SEPH." Per SEPH, while the Trustee has standing to pursue the estate's claims as to whether the assets in the Trust can be used to satisfy all of Jason Dyken's creditor obligations, in Count Seven SEPH seeks a declaration regarding one (1) specific creditor, itself.

A Trustee's powers are two-fold. "A trustee in bankruptcy draws ... rights and authority from the Bankruptcy Code. That authority falls into two broad categories: (1) rights and claims held by the trustee as successor to the debtor's interests included as property of the estate under 11 U.S.C. § 541, and (2) actions brought under one of the trustee's avoidance powers [including 11 U.S.C. § 544]." In re Central Illinois Energy Co-op., 526 B.R. 786, 791-792 (Bank. C.D. Ill. 2015). Part of a Trustee's rights and authority include avoidance strong-arm powers,[5] which are not limited to fraudulent transfers of property. Just as the Trustee and SEPH have previously highlighted: "the Bankruptcy Code makes plain ... the trustee's strong arm reaches ... to enable him to avoid 'any transfer of property of the debtor or any obligation incurred by the debtor.'" In re Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999) (quoting 11 U.S.C. § 544)."  (Doc. 104 at 4). Upon consideration, the Court finds that the claim in Count Seven is not a claim to avoid a fraudulent transfer or obligation and thus does not fall under the Trustee's avoidance strong arm powers. Therefore, the Defendants' motion to dismiss Count Seven due to SEPH lacking standing to bring the claim is **DENIED.**

---

[5] A Trustee's strong-arm powers are fully set forth in 11 U.S.C. §§ 544, 547 and 548.

However, property of a bankruptcy estate is defined broadly to include any property to which the estate has some right. 11 U.S.C.A. § 541(a)(1).[6] Pursuant to Section 541, the Trustee has powers as the successor in interest to all legal/equitable interests in property the debtor possessed when the bankruptcy case commenced pursuant to Bankruptcy Code provisions defining "property of the estate" (which authorize the Trustee to augment the estate by reversing certain transfers and stripping off certain interests). In re Franklin Equip., Co., 418 B.R. 176 (E.D. Va. 2009). For example, as summarized in In re Gladstone, 513 B.R. 149, 156-157 (S.D. Fla. 2014):

> Count I seeks a declaratory judgment that all of the defendants "are owned by the Debtor and/or are his alter ego, that they and their assets are accordingly property of the estate under 11 U.S.C. § 541." The plaintiff seeks an order determining what is property of the estate and thus subject to administration in the Debtor's chapter 7 case. The determination of property of the estate is a matter that can only arise in a title 11 case, and so it is a proceeding "arising in" a case under title 11. It is also a proceeding "arising under" title 11 as the Court is asked to determine the scope of 11 U.S.C. § 541. That the determination of what is and is not included in property of the estate requires the Court to consider state law, here under a theory of *alter ego,* does not cause the inquiry to lose its nature as one arising only in a case under title 11 and arising under title 11.[] As the Supreme Court has recognized, this Court routinely considers state law issues in ruling on property rights in bankruptcy.

---

[6] Section 541 provides: **(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

**(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--**(A)** under the sole, equal, or joint management and control of the debtor; or **(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

**(3)** Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

**(4)** Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

**(5)** Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date-- **(A)** by bequest, devise, or inheritance; **(B)** as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or **(C)** as a beneficiary of a life insurance policy or of a death benefit plan.

**(6)** Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

**(7)** Any interest in property that the estate acquires after the commencement of the case.

19

*Butner v. United States,* 440 U.S. 48,... (1979). Here, it is the nature of the allegations in the complaint that bring the matter within the ambit of 11 U.S.C. § 541. The Court is asked to rule that property held in the name of the defendants is and always has been beneficially owned by the Debtor. Other cases may present requests for relief based in *alter ego* that are more akin to pursuit of a claim owned by the estate for the purpose of augmenting the estate. In such a case, there is "related to" jurisdiction rather than "arising in" or "arising under" jurisdiction. For example, where a trustee prosecutes the estate's *alter ego* claim based on alleged fraud, the goal is not the recognition of what is already part of the estate but a ruling that the assets of another should be held to satisfy the claims of creditors of the estate. *See Wellness Int'l Network, Ltd. v. Sharif,* 727 F.3d 751, 773 (7th Cir.2013), *cert. granted in part,* ––– U.S. –––, 134 S.Ct. 2901, ––– L.Ed.2d ––– (2014). The Court looks beyond the label applied to the claim to its substance. Where the substance of the demand for relief requires the Court to recognize whether something is or is not property of a debtor to be administered as part of the estate, as it is here, the matter "arises in" a title 11 case and "arises under" title 11 within the meaning of 28 U.S.C. § 1334(b).

On January 2, 2023 the Trustee filed an Adversary Complaint in the bankruptcy case which includes, *inter alia,* this same claim on behalf of all creditors in the bankruptcy court. See Doc. 237-1 at 2-15 (Bankruptcy Case No. 23-01001). Specifically, in Count One, the Trustee has requested a declaratory judgment declaring that:

> (a) The Sixth Sense Trust is revocable, and .... **the assets of the Sixth Sense Trust belong to the Trustee of the Bankruptcy Estate, or in the alternative, the assets transferred to the Sixth Sense Trust by Debtor belong to the Bankruptcy Trustee**;
> (b) Alternatively, the Sixth Sense Trust is irrevocable but under applicable law, the assets belong to the Bankruptcy Trustee, or in the alternative, the assets transferred to the Sixth Sense Trust by the Debtor belong to the Bankruptcy Trustee;
> (c) If Belize law is applicable, under Belize law, the Sixth Sense Trust is invalid and unenforceable, and therefore the assets of the Sixth Sense Trust belong to the Bankruptcy Trustee;
> (d) To the extent that the Sixth Sense Trust is valid and enforceable under Belize law and Belize law would shield the assets from the claims of Debtor's creditors, the Sixth Sense Trust is subject to the laws of Alabama, and therefore if the Sixth Sense Trust is deemed to be an irrevocable trust, the portion of the assets of the Sixth Sense Trust attributable to Debtor's contributions to the Trust belong to the Trustee of the Bankruptcy Estate, and if the Sixth Sense Trust is deemed revocable, then the assets in the Sixth Sense Trust may be reached by the Debtor's creditors;
> **(e) The Sixth Sense Trust provides, by its terms, that its assets be turned over to the Trustee of the Bankruptcy Estate;**

(f) **Some or all of the transfers of assets to the Sixth Sense Trust were ineffective, and therefore those assets belong to the Trustee of the Bankruptcy Estate**; and/or,

(g) Some or all of the purported transfers of assets to the Sixth Sense Trust were actually transfers to an undocumented, Alabama Sixth Sense Trust which is revocable and in which the assets should be turned over to the Trustee of the Bankruptcy.

Id. at 10-12 (emphasis added).  Subsequently, the Trustee filed an Amended Adversary Complaint

adding Capital Mass Limited Partnership as a defendant and adding counts including Count Four,

another Declaratory Judgment, as follows:

...There is presently a dispute between the Trustee and the Defendants regarding the Sixth Sense Trust and CMLP, as described herein. 11. The Defendants have refused to turn over assets in or transferred to the Sixth Sense Trust or to themselves as Trustees of the Sixth Sense Trust, including CMLP and other businesses/entities directly or indirectly owned by the Trust or Trustee(s) of the Sixth Sense Trust. Each of these businesses/entities is controlled by the Sixth Sense Trust, the Debtor and/or Renee Dyken.

The Trustee respectfully requests that this Court order that the assets in businesses/entities owned by the Sixth Sense Trust or owned by the Trustee(s) of the Sixth Sense Trust, be turned over to the Bankruptcy Trustee, because they are being used for the Debtor's personal gain and in contravention of the Sixth Sense Trust.

The ATM machines, as well as any other assets of the Sixth Sense Trust and the businesses/entities owned directly or indirectly by the Sixth Sense Trust or the Trustee(s) of the Sixth Sense Trust, belong, at least in part, to the Debtor and therefore belong to the Trustee for the Bankruptcy Estate.

***

Trustee respectfully requests that this Court declare, cumulatively or in the alternative, as appropriate, that:

(a) Some or all of the assets in the Sixth Sense Trust and of businesses/entities owned directly or indirectly by the Sixth Sense Trust or the Trustee(s) for the Sixth Sense Trust, are being used for the personal benefit of the Debtor in contravention to the Sixth Sense Trust, and

(b) Some or all of the assets in the Sixth Sense Trust and of businesses/entities owned directly or indirectly by the Sixth Sense Trust or the Trustee(s) for the Sixth Sense Trust, should be turned over to the Trustee as assets of the Bankruptcy Estate.

And as noted *supra*, in the Second Amended Complaint, SEPH is the only plaintiff in Count

Seven which seeks entry of a declaratory judgment that "Jason's liability pursuant to his guaranties

of loans to Bama Bayou and Marine Park qualifies as one of the 'exemptions' from the protective

features of Sixth Sense Trust and, pursuant to the trust agreement, Sixth Sense Trust is therefore

'to satisfy such liability from Trust assets.'" (Doc. 219 at 18). Per SEPH, "any assets (not just the portion attributable to Jason's contribution) held in the Sixth Sense Trust can be used to satisfy this debt." (Doc. 248 at 7). Significantly, SEPH "*specifically requests a judicial declaration that .... the assets of the Sixth Sense Trust are to be used to satisfy the Judgment."* (Doc. 219 at 19 (emphasis added)).

Both SEPH and the Trustee seek a declaratory judgment that the Trust assets can be reached to satisfy claims. The Trustee highlights the same language of the Trust as SEPH in support of declaratory relief. The Trustee alleges in her original Adversary Complaint: "[t]he assets of the trust are further available to the creditors of Debtor because the Trust language specifically provides that any voluntary debt in which Debtor undertakes, may be satisfied with assets in the Sixth Sense Trust." (Doc. 237-1 at § 23 - Bankruptcy Case). Essentially the same argument, based on the same Trust language. SEPH notes however, that "[w]hile the Trustee does reference the exemption provision that is also the subject of Count Seven ... the crux of the Trustee's action is that the assets held in trust (or a portion of those assets) should be turned over for the benefit of all of Jason's creditors. The Trustee does not identify specific voluntary debts and does not seek only to have the assets held in trust be applied to a specific debt or specific debts." (Doc. 248 at 6). In otherwords, SEPH's characterizes Count Seven as *singularly* focused on all Trust assets being turned over to SEPH *for Jason Dyken's specific liability to SEPH*, whereas the Trustee is focused on the Trust assets being turned over for all creditors. As summarized by SEPH, the Bankruptcy Court "may determine that all the assets of the trust must be turned over to the Trustee (even those not attributable to Jason's contribution).... [or may instead] .... order that only the portion of assets in the trust that are attributable to Jason's contribution be turned over to the Trustee ... [leaving the] .... remaining assets ... to satisfy Jason's debt to SEPH in the event SEPH has prevailed on ....

Count Seven ... [and] ... if the Trustee is not successful on any of her claims in the adversary proceeding and none of the trust assets are turned over to the Trustee, then all the assets held in the Sixth Sense Trust would be available to satisfy Jason's debt to SEPH if SEPH has obtained a declaratory judgment in this Court that the assets held in Sixth Sense Trust can be used to satisfy Jason's debt to SEPH under the exemption provision at issue." (Doc. 248 at 12).

The foregoing contentions -- and status of Count Seven being litigated in this Court simultaneously with the Trustee's Adversary Claim being litigated in the Bankruptcy Court -- have prompted a review of the record and whether Count Seven should remain as part of the litigation in District Court.

Pursuant to 28 U.S.C. § 1334(a), district courts have "original and exclusive jurisdiction of all cases under title 11." Pursuant to 28 U.S.C. § 1334(b), district courts also have original, but not exclusive, jurisdiction to hear "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Additionally, pursuant to 28 U.S.C. §§ 1334(c)(1) and (d), "nothing in this section [1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11[,]" and "[a]ny decision to abstain or not to abstain made under subsection (c) ... is not reviewable by appeal or otherwise by the court of appeals ... or by the Supreme Court of the United States ...."[7]  "The court may abstain upon request of a party or *sua sponte*." Carver v. Carver, 954 F.2d 1573, 1579 (11th Cir.1992). See also Golf Club at Bridgewater, L.L.C. v. Whitney Bank, 2013 WL 1193182, *4 (M.D. Fla. Mar. 22, 2013) ("[p]ermissive abstention under § 1334(c)(1) may be raised by the court sua sponte[]").

---

[7] Mandatory abstention, Section 1334(b)(2), is inapplicable, as it is required only where "an action could not have been commenced in a court of the United States absent jurisdiction under § 1334."

Moreover, pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." See, e.g., Bank of America, N.A. v. Websci Tech., Inc., 2006 WL 1210839, *7 (D. N.J. May 4, 2006) ("[A]lthough not raised by either party, this Court will now exercise its discretion pursuant to 28 U.S.C. § 157(a) and will *sua sponte* refer ...[the]... motion back to the Bankruptcy Court[]"). Further, bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11[;]" and "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11[.]"  28 U.S.C. § 157(b)(1), 157(c)(1). Finally, the August 25, 2015 Standing Order of Reference re: Title II (SDAL) provides:

> Pursuant to 28 U.S.C. § 157(a), any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for this district.
>
> If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court. The district court may treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution.

As noted *supra*, where the substance of the demand for relief requires the Court to recognize whether something is or is not property of a debtor to be part of the estate, the matter arises in/under a title 11 case. Count Seven is a request for contractual interpretation -- for the Court to review the Trust's formation documents (contract), assess the applicability of the Trust's language to Jason Dyken's liabilities (including SEPH's state court Judgment against him), declare whether the Trust's assets are protected from same, and declare "the assets of the Sixth Sense Trust

are to be used to satisfy the Judgment." The Trustee's original Adversary Complaint and Amended Adversary Complaint are not focused on SEPH's state court Judgment against Jason Dyken, but accessibility of the Trust's assets as property of the debtor's estate for the benefit of all creditors. Given the foregoing, a ruling in this Court as to Count Seven would likely impact a determination in the Bankruptcy Court as to the Trustee's Adversary Complaint regarding the Trust.

This includes, but is not limited to the following example. Jason Dyken is no longer a Trustee of the Trust, leaving Renee Dyken as the sole Trustee. The Sixth Sense Trust asserts on summary judgment that the Trust provides that Renee Dyken, as the trustee, now has extended (and sole) discretion[8] to determine whether the exemption applies and that she has already determined the exemption does not apply because the validity of Jason Dyken's debt is disputed/contested. (Doc. 265 at 14, 19). A ruling as to whether Renee Dyken has sole discretion to determine whether the exemption applies would necessarily impact not only a ruling on Count Seven but also the Trustee's Adversary Complaint/Amended Adversary Complaint. Given the foregoing, inconsistent rulings could readily result if Count Seven remains in this Court.

Moreover, as SEPH has acknowledged, Count Seven is an alternative theory to access the assets of the Sixth Sense Trust. Count Seven is not based on the alleged fraudulent transfer or the alleged fraudulent financial statements that are bases of the other counts in the Second Amended Complaint. In other words, Count Seven does not implicate claims in the nondischargeability action; the basis of the Bankruptcy Court's order to lift the stay.

Thus, the Court finds that it is in the interests of justice to refer Count Seven to the Bankruptcy Court to be pursued with the claims asserted by the Trustee (all focused on a

---

[8] "The trustee is directed to interpret and administer this Trust or any Trust created by this instrument with these purposes in mind. It shall be at the sole discretion of the Trustee, with the consent of the Protector of this Trust as to when these exemptions will apply."

determination of what constitutes the "property of the estate" to be within reach of all creditors) to avoid conflicting rulings and, in the event the Sixth Sense Trust is required to distribute assets to the estate, to allow for equitable distribution among all creditors. Accordingly, Count Seven is **REFERRED** to the Bankruptcy Court.

## V.    <u>Conclusion</u>

Based on the foregoing, it is **ORDERED** that: 1) Defendant Renee Dyken's motion to dismiss SEPH's claims against the Sixth Sense Trust (Docs. 223, 224) is **DENIED;  2) The Court construes the response of the Trustee as a motion to join Renee Dyken,** as Trustee of Sixth Sense Trust, to the Second Amended Complaint, and said motion is **GRANTED; 3)** Defendants' Motion to Dismiss Count Seven (Doc. 237) is **DENIED;** and **4)** Count Seven is **SEVERED** from the Second Amended Complaint and **REFERRED** to the U.S. Bankruptcy Court (SDAL).

**DONE** and **ORDERED** this the **14th** day of **June 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**