IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRIE S. OWENS, Bankruptcy Trustee, *et al.*,<br>    Plaintiffs,<br><br>vs.<br><br>JASON DYKEN, *et al.*,<br>    Defendants. | CIVIL ACTION 1:20-00297-KD-B |

**ORDER**

This matter is before the Court on Defendant Renee Dyken's motion for summary judgment (Docs. 260-262), the Trustee's Response (Doc. 287), and Renee Dyken's Reply (Doc. 299).

**I.    Findings of Fact**[1]

On November 20, 2019, SE Property Holdings, LLC (SEPH) (previously Vision Bank) obtained a $6,169,347.80 judgment in state court against Defendant Jason Dyken in a breach of contract action based (in part) on his personal continuing guaranty of approximately $20 million in loans to certain entities which defaulted (Mobile County Circuit Court Case No. 2009-900085). Specifically, the contractual litigation focused on four (4) defaulted Vision Bank loans for which Defendant Jason Dyken was a guarantor: 1) a March 24, 2005 loan to Bama Bayou, LLC for $6 million -- Dyken guaranteed $315,000; 2) a June 12, 2006 loan to Bama Bayou, LLC for $5 million -- Dyken guaranteed $280,000; 3) a March 2, 2007 loan to Marine Park, LLC for $5 million -- Dyken guaranteed $280,000; and 4) a September 27, 2007 loan to Bama Bayou, LLC for $5

---

[1] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

million -- Dyken guaranteed to pay accrued interest on the other three (3) loans. (State - Third Amended Complaint). Because Vision Bank merged with/into SEPH, SEPH was substituted for Vision Bank as the plaintiff. However, after that litigation commenced, SEPH assigned to First National Bank (FNB), the Marine Park Loan and related guaranties, as well as all claims arising out of the loan and guaranties. In the state case, FNB was then substituted for SEPH on the counts related to the Marine Park loan and that loan's guaranties. (State - Third Amended Complaint).

On June 1, 2020, SEPH initiated this federal litigation against the Defendants alleging that Jason Dyken was a principal in the Bama Bayou real estate project in Orange Beach, Alabama; between 2005-2007, Vision Bank loaned approximately $20 million to Bama Bayou; and Dyken personally guaranteed the loans. (Doc. 1). SEPH alleges the Bama Bayou project had financial difficulties and that fearful of his liability, Jason Dyken and his wife Renee Dyken devised a scheme in 2007 to protect his assets from SEPH, including the creation of the Sixth Sense Trust (in which they are trustees and beneficiaries) to defraud Jason Dyken's creditors (such as SEPH). (Id.) Per SEPH, the Dykens conducted a series of fraudulent transfers to avoid their debt obligations including: 1) a January 1, 2007 transfer of 100% of The Mortgage Doctor to Capital Mass Limited Partnership (CMLP); 2) the January 3, 2007 creation of the Sixth Sense Trust whose settlors, trustees, and beneficiaries are Jason and Renee; 3) a February 14, 2007 transfer of 98% of the ownership of CMLP to the Trust; 4) a March 22, 2007 transfer of certain assets to the Trust (Bear Creek Drive Gulf Shores, AL residence (Residence) and a home at West Beach Boulevard Gulf Shores, AL (Beach House)); 5) a March 22, 2007 conveyance to The Mortgage Doctor of two (2) parcels of real property in Baldwin County, Alabama; and 6) at "various times" the transfer of money into accounts purporting to be life insurance policies (Cash Transfers). (Id.)

2

SEPH asserts further, that Jason Dyken submitted two (2) fraudulent financial statements to the bank: 1) a May 10, 2007 financial statement (which showed him as the owner of the residence and beach house when the Trust owned those properties, failed to disclose the Trust, and falsely stated that he owned other assets including an R/V Park and orthodontist building); and 2) April 23, 2008 financial statement (which failed to disclose the Trust). (Id.) Per SEPH, debtor Jason Dyken falsified these financial statements "so ... Vision would continue to fund the existing Marine Park Loan, continue to extend financing to Bama Bayou and Marine Park, and continue to work with Bama Bayou and Marine Park in connection with the Project." (Id. at 8-9).

On January 8, 2021, Jason Dyken filed a Suggestion of Bankruptcy indicating that he had filed a Chapter 7 Bankruptcy Petition in the Bankruptcy Court for the Southern District of Alabama. (Doc. 76). On January 12, 2021, this Court issued a stay of all proceedings against Jason Dyken only due to same. (Doc. 77). Thereafter, varying forms of the complaint followed, and on March 15, 2023, a Second Amended Complaint was filed. (Docs. 218, 219).

The Second Amended Complaint alleges on behalf of the Trustee, actual fraudulent transfer (11 U.S.C. § 544(b) and Ala Code § 8-9A-4(a)) (Count One), constructive fraudulent transfer (11 U.S.C. § 544(b) and Ala Code § 8-9A-4(c)) (Count Two), constructive fraudulent transfer (11 U.S.C. § 544(b) and Ala Code § 8-9A-5(a)) (Count Three), conspiracy to defraud (11 U.S.C. § 544(b) and Alabama common law) (Count Four), and an accounting and declaratory judgment (11 U.S.C. § 544(b) and Alabama common law) (Count Eight); and on behalf of SEPH, fraudulent representation (related to the financial statement) (Count Five), fraudulent concealment (related to the financial statement) (Count Six), and a declaratory judgment (Count Seven). (Doc. 219).

On May 8, 2023, Renee Dyken moved for summary judgment. (Docs. 260-262).

3

On June 14, 2023, after consideration of two (2) motions to dismiss, the Court referred Count Seven to the Bankruptcy Court, and ordered that Renee Dyken, in her capacity as Trustee of Sixth Sense Trust, be joined or added as a defendant in this case. (Doc. 312).

## II.  Conclusions of Law

### A.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(c) Procedures*
>
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The movant must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence and the inferences from that evidence in the light most favorable to the nonmovant. Jean–Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. Id. Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); see also Fed. R. Civ. P. 56 Adv. Cmte. Note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish -- with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. Celotex, 477 U.S. at 324. A genuine dispute exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. Waddell v. Valley Forge Dental Assoc., 276 F.3d 1275, 1279 (11th Cir. 2001).

**B.     Discussion**

In the Second Amended Complaint, the Trustee's common law conspiracy to defraud claim against Renee Dyken is asserted as follows:

> Through the above and other acts and omissions, Jason, Renee, Sixth Sense Trust, The Mortgage Doctor, and CMLP conspired to hinder, delay, or defraud Jason's creditors, including SEPH.

5

> As a result of said conspiracy, Jason's bankruptcy estate has been damaged, and Jason, Renee, Sixth Sense Trust, The Mortgage Doctor, and CMLP are liable to the Trustee for such damages.

(Doc. 219 at 16 at ¶¶70-71). As to Renee's acts and omissions, the allegations are as follows:

> In late 2006 and early 2007, Jason and Renee began planning and effecting a scheme and series of transactions to shield and protect Jason's assets from SEPH.
>
> Jason and Renee, fearful of Jason's liability related to the Project, spoke to or met with out-of-state attorneys specializing in "asset protection" services.
>
> ... January 3, 2007, with the help of the out-of-state "asset protection" attorneys, Jason and Renee created Sixth Sense Trust for the purpose of defrauding Jason's creditors, including Vision. Jason and Renee are the trustees and beneficiaries of the Sixth Sense Trust.
>
> .... February 14, 2007, Jason and Renee effected the transfer of 98% of the ownership of CMLP to Sixth Sense Trust.
>
> .... March 22, 2007, Jason and Renee transferred the following assets to the Sixth Sense Trust: (i) their residence at 769 E. Bear Creek Drive in Gulf Shores, Alabama ..... and (ii) a house on Little Lagoon at 2328 West Beach Boulevard, in Gulf Shores, Alabama ...
>
> ... March 22, 2007, Jason and Renee conveyed to The Mortgage Doctor two metes and bounds parcels of real property .... Baldwin County, Alabama.
>
> ***
>
> ... Sixth Sense Trust, the instrument of fraud that was created by Jason and Renee.

(Id. at 8-10 at ¶¶32-33, 35-38, 41).

Renee Dyken moves for summary judgment on the singular[2] count the Trustee alleges against her -- Count Four of the Second Amended Complaint for conspiracy to defraud (11 U.S.C. § 544(b)/Alabama common law). As grounds, Renee Dyken specifically argues: 1) there is no underlying action alleged against her and the conspiracy claim is alleged as a "stand alone" claim;

---

[2] Count Seven, for which the Court ruled that Renee Dyken should be added or joined with Sixth Sense Trust, has been severed from this case and referred to the Bankruptcy Court. Thus, it is no longer pending in this case or an active claim to be litigated in this Court.

and 2) the Trustee has submitted no direct or admissible evidence supporting the elements for such conspiracy but speculation and unsupported inference. Otherwise, Renee Dyken summarily adopts and incorporates by reference Defendant Jason Dyken's briefing concerning a different motion for summary judgment (including that the Trustee's claim is time barred and the conspiracy claim fails due to the intercorporate conspiracy doctrine).

In Snyder v. Faget, 326 So.2d 113, 119 (Ala. 1976), the Alabama Supreme Court summarized the elements of civil conspiracy as follows:

> .... plaintiff has the burden of proof, and must establish every element of the tort alleged. In Jolowicz & Lewis, Winfield on Torts, Conspiracy 557, 559, 560 (8th ed. 1967), the necessary elements are summarized as follows:
>
>> '(a) Purpose. The most important feature of a tortious conspiracy where unlawful means are not used is that the object or purpose of the combination must be to cause damage to the plaintiff. It is not a matter of 'intention' as that word is normally used in the law, for intention signifies not what a person is aiming at but what may reasonably be expected to flow from what he does, while for conspiracy the test is 'what is in truth the object in the minds of the combiners when they acted as they did.' Malice in the sense of malevolence, spite or ill-will is not an essential for liability; what is required is that the combiners should have acted In order that (not So that) the plaintiff should suffer damage. If they did not act in order that the plaintiff should suffer damage they are not liable, however selfish their attitude and however inevitable the plaintiff's damage may have been.
>> '...
>> '(b) Combination. There must, of course, be concerted action between two or more persons ...
>> '(c) Overt act causing damage ... an overt act causing damage is an essential of liability in tort ....'

See also AmSouth Bank N.A. v. Spigener, 505 So.2d 1030, 1040 (Ala. 1986) (citing Snyder). Recently, the court in Lombard v. Baker, 2023 WL 2974933, *13 (M.D. Ala. Feb. 22, 2023) (internal citations omitted), *Report & Recommendation adopted by* 2023 WL 2525509 (M.D. Ala. Mar. 15, 2023) stated:

7

> Under Alabama law, "to succeed on a civil-conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." ... 'liability ... rests upon the existence of an underlying wrong and [that] if the underlying wrong provides no cause of action, then neither does the conspiracy.'" ...
>
> ... Plaintiff styles his claims as one for civil conspiracy to defraud. Under Alabama law .... common law fraud require[s], among other things, a material misrepresentation or suppression of a material fact on the part of the defendant and detrimental reliance on that misrepresentation or omission on the part of the plaintiff ....

Moreover, as expressed by this Court:

> "The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." *Turner v. Peoples Bank of Pell City*, 378 So.2d 706, 708 (Ala. 1979); *see also Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala. 1988) ("By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence.").

SE Prop. Hldgs, LLC v. Saint Family Ltd. Pp, 2017 WL 1628898, *9 (S.D. Ala. May 1, 2017). With this in mind, the Court turns to Renee Dyken's arguments.

**First**, as to Renee Dyken's adoption of Jason Dyken's arguments that Count Four is barred by the applicable statute of limitations, that tolling is inapplicable, and that the claim fails due to the intra-corporate conspiracy doctrine, these defenses will be addressed in the order on Jason's Dyken's motions.

**Second,** Renee Dyken argues that the Trustee's conspiracy to defraud claim against her fails because it is a "stand-alone" claim: she "has never been sued by SEPH or the Trustee for making any statutory fraudulent transfer or for fraudulently misrepresenting or suppressing any fact[]" and "has not been sued for any tort claims other than conspiracy to defraud[.]" (Doc. 261 at 26-27). In support, Renee Dyken cites caselaw indicating that if the underlying claim fails or is

8

dismissed then the conspiracy claim upon which the underlying claim is based is no longer viable. While accurate, the cases are inapposite -- *such is not the circumstance here*. (Doc. 261 at 24-28).

As summarized in United Steel, Paper and Forestry, Rubber, Manuf., Energy Allied Indus. and Service Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC, 2009 WL 10671691, *7 (N.D. Ala. Jul. 13, 2009):

> A civil conspiracy is not an independent cause of action." *Funliner of Alabama, L.L.C. v. Pickard*, 873 So. 2d 198, 211 (Ala. 2003) (citing *Drill Parts and Service Co. v. Joy Manufacturing Co.*, 619 So.2d 1280, 1290 (Ala. 1993)). Thus, a conspiracy claim "cannot exist in the absence of an underlying tort." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006) (citing *Avis Rent a Car Sys., Inc. v. Heilman*, 876 So.2d 1111, 1124 (Ala. 2003))....

However, the Alabama Supreme Court has explained that "[a] civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts." Saint Family Ltd. Pp, 2017 WL 1628898 at *9 (internal citation omitted). Thus, "the acts of co-conspirators are attributable to each other." Ex parte Reindel, 963 So.2d 614, 621 n.11. See also Huckleberry v. M.C. Dixon Lumber Co., 503 So.2d 1209, 1210-1211 (Ala. 1987) ("[i]t is not an essential element of the claim that a particular conspirator commit an overt act in furtherance of the conspiracy[]").

What this means, is that the conspiracy to defraud claim against Renee Dyken has been properly alleged even though no underlying tort has been alleged directly against her. As an alleged co-conspirator, she may be accountable and liable for the underlying actions alleged against other co-conspirator(s) such as Jason Dyken. In the Second Amended Complaint, the Trustee alleges that Jason Dyken and Renee Dyken were two (2) individuals who combined and worked together to defraud Jason Dyken's creditors (an unlawful end) with the underlying tort or wrong being Jason Dyken's fraudulent transfers. The Trustee has alleged that Renee Dyken

9

committed acts in furtherance of this conspiracy to defraud. (Doc. 219 at 8-10 at ¶¶32-33, 35-38, 41). *The counts for fraudulent transfer are pending.* Because the acts of co-conspirators are attributable to each other -- *i.e.*, Jason Dyken's acts (the alleged fraudulent transfers (and counts)) are *presently* attributable to Renee Dyken -- the Trustee has sufficiently alleged a claim for conspiracy to defraud against Renee Dyken *at this juncture.* See, e.g., Physiotherapy Assoc., Inc. v. ATI Hldgs, LLC, 2019 WL 4415567, *15 (N.D. Ala. Sept. 16, 2019) ("if a plaintiff shows that a defendant worked with someone else to engage in unlawful conduct, the plaintiff can bring a civil conspiracy claim against the defendant[]"); Staples v. H. Walker Enterp., LLC, 2019 WL 3322803, *12 (N.D. Ala. Jul. 24, 2019) ("Simmons asserts that summary judgment is due to be granted .... because it is the only party named a Defendant to .... underlying counts ... [h]owever, '[a] civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts[]' … [t]hus, as long as a plaintiff shows that a defendant worked together with others to engage in unlawful conduct, it may bring a civil conspiracy claim against that defendant[]"); In re Leopard, 2014 WL 2740320, *5 (N.D. Ala. Jun. 17, 2014) ("the fact that a valid underlying tort was no longer pending against that particular defendant did not preclude the plaintiff's civil conspiracy claim against that defendant 'because acts of coconspirators are attributable to each other[]' … [and] … did not dictate entry of summary judgment in … [said defendant's] favor on the conspiracy claim against her[]"); DGB, LLC v. Hinds, 55 So.3d 218, 234 (Ala. 2010) ("[b]ecause the investors … alleged valid underlying causes of action and because acts of coconspirators are attributable to each other … the investors have stated a claim of civil conspiracy upon which relief may be granted against each of these defendants[]") (internal citation omitted).

Stated simply, there is no requirement that an underlying tort be alleged against each conspirator or that each conspirator must be individually liable for each underlying tort for a related conspiracy claim to remain viable. It is only *if and when* the underlying tort of the conspiracy is no longer viable (*e.g.*, unless and until the fraudulent transfer counts are dismissed or otherwise disposed of in this case) that the conspiracy to defraud claim evaporates. "The viability of a civil conspiracy claim depends upon the viability of the claim relating to the underlying civil wrong made the subject of the conspiracy." Pescia v. Auburn Ford-Lincoln Mercury, Inc., 68 F.Supp.2d 1269, 1281 (M.D. Ala. 1999), *affirmed by* 31 Fed. Appx. 202 (11th Cir. 2001). Thus, Renee Dyken's motion as to the "stand-alone" conspiracy claim argument is without merit.

**Third,** Renee Dyken argues that the Trustee has failed to create a genuine issue of material facts as to the necessary elements for conspiracy to defraud due to the lack of direct or admissible evidence. According to Renee Dyken, the Trustee lacks any direct or admissible evidence of her state of mind in 2006 or 2007, or that she had a meeting of the minds with her husband Jason Dyken to accomplish a common and unlawful plan, or to work together to achieve an unlawful purpose or a lawful end by unlawful means. In support, Renee Dyken argues that she:

> ... did not know any specifics about the Bama Bayou project. While she was aware that Jason invested in the project in 2003, she and Jason did not discuss the project. .... she was only generally aware of Jason's investment in the project itself and that in 2006 and 2007 she remembers that they were "still excited about the dolphin prospect at that point." .....
> ***
> .... was completely unaware that Jason had executed any of the guaranties of the debt. She did not discover Jason's potential liability on the guaranties until after the Collection Lawsuit was filed on January 16, 2009, which was more than two years after she and Jason signed the Declaration forming the Sixth Sense Trust. ... She was very clear that Jason never expressed any concern to her about the project prior to the formation of the Trust and the transfer of her interest in her assets into it. ...

> ... Renee did not have any knowledge about the loans or guaranties when she acted on her financial advisor … recommendation to form the Trust and transfer her interests in her real estate investments into it. The Bama Bayou lawsuit was not … filed against Jason for two more years .... Renee had no agreement with Jason to accomplish a series of fraudulent transfers … Renee acted on a financial advisor's recommendation to create a new trust to replace the existing trust and which would allow for reduction of the administrative burdens of the existing structure.

(Doc. 261 at 19-20).

In response, the Trustee argues – regarding the purpose and creation of Sixth Sense Trust – that "the weight of the evidence is that they [Renee and her husband Jason Dyken] were concerned with Jason's exposure to a failing real estate project." (Doc. 287 at 2). In support, the Trustee lists the following circumstantial evidence:

> -Renee and Jason are married which is "an important consideration in drawing inferences related to whether there was a conspiracy[]" as "it is a logical inference that Jason would discuss ... concerns with his wife[;]"
> -Jason and Renee were business partners in several ventures and "the logical inference.... is that Jason and Renee would have discussed the Bama Bayou project and his concerns regarding his liability[;]"
> -Renee knew her husband was investing in the Gulf World project;
> -Renee knew all investments have risk;
> -Renee admitted protecting her husband's assets was important to her;
> -Renee and Jason "had no need for any estate planning" at the time of Jason's third guaranty related to the Bama Bayou project;
> -"[t]he notion that they would pay substantial attorney's fees for asset protection and then simply re-do it three years later without discussing the reasons, which undoubtedly included Jason's exposure to the faltering Bama Bayou project, is not believable[;]"
> -Renee was "actively involved in the transfers[;]" the "timing ... raises an inference[;]"
> -"[a] comparison of Sixth Sense Trust with the Renee Dyken Trust and the Jason Dyken Trust makes clear Renee and Jason's reasons for creating and using the Belize asset protection trust [Sixth Sense Trust -- "exclusively ... asset protection[;]" and
> -after becoming the sole Trustee "continues to use her right of control of the trust to aid her husband's efforts to hinder, delay, or defraud his creditors[.]"

12

(Doc. 287 at 2-20). Apart from the foregoing, the Trustee references evidence related to Jason Dyken (his testimony about his state of mind, his statements about business ventures and assets, his actions regarding the Trust, etc.), suggesting such is imputed to Renee Dyken as his wife.

"Conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979).[3] As a result, summary judgment assessments of conspiracy claims often rest on whether inference and circumstantial evidence tends to exclude the possibility of conspirators acting independently and/or demonstrates facts/circumstances suggestive of conspirators acting together, etc. As stated in Marshall v. Planz, 13 F.Supp.2d 1231, 1243 (M.D. Ala. 1998):

> Where a plaintiff cannot point to an explicit agreement among the alleged conspirators, as is the case here, he or she may resort to circumstantial evidence. Under such circumstances, "the plaintiff, to survive a motion for summary judgment, must present evidence that reasonably 'tends to exclude the possibility' that the alleged conspirators acted independently." Todorov, 921 F.2d at 1456 (quoting Monsanto Co. v. Spray–Rite Serv. Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984)). As the Eleventh Circuit has explained:
>
>> …'conduct as consistent with permissible [activity] as with illegal conspiracy does not, standing alone, permit the inference of conspiracy.'…
>
> Todorov, 921 F.2d at 1456 (internal citations omitted).

Due to a conspiracy's "clandestine nature," inference may be derived after considering "the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." Thompson Props. 119 AA 370, Ltd. v. Birmingham Hide and Tallow Co., 897 So.2d 248 (Ala. 2004). See also e.g., Saint Family Ltd. Pp, 2017 WL 1628898 at *9 ("the conspiracy's existence may be proven at trial inferentially and circumstantially by the character of

---

[3] The Eleventh Circuit, in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action[]"). Moreover, per SE Prop. Hldgs, LLC v. Braswell, 255 F.Supp.3d 1187, 1212 (S.D. Ala. 2017):

> ... defendants' contention that no evidence links Mrs. Braswell to any fraudulent transfer scheme is incorrect. Braswell transferred more than $1 million in assets to his wife after he had been sued, without receiving reasonable value, and in a manner that left him with insufficient assets to pay for his ongoing business transactions and debts. Perhaps a reasonable finder of fact could conclude at trial that Mrs. Braswell was unaware of these machinations. But, on this record, the evidence does not compel such a finding. After all, "[t]he existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." *Turner v. Peoples Bank of Pell City*, 378 So.2d 706, 708 (Ala. 1979); *see also Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala. 1988) ("By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence."). Notwithstanding Mrs. Braswell's denial of knowledge of her husband's investments, obligations and liabilities, and the paucity of direct evidence of a conspiracy, the circumstantial evidence and relationship of the Braswells are suggestive of concerted action; therefore, a triable issue of fact remains, and summary judgment is inappropriate....

However, as explained in Hosea v. Langley, 2006 WL 314454, *28 (S.D. Ala. Feb. 8, 2006) (internal citations omitted), more than speculation and conjecture must be present:

> The Hoseas do "not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy.' … Nonetheless, it is incumbent on them to "show some evidence of agreement between the defendants." …
> \*\*\*
> ... The Eleventh Circuit has cautioned that a conspiracy claim cannot withstand Rule 56 scrutiny on the basis of a mere scintilla of evidence…
> \*\*\*
> the Hoseas ask the Court to allow their conspiracy claims to reach a jury on the basis of conjecture, surmise, and guesswork. But all the speculation in the world cannot obscure the fact that plaintiffs have no evidence of the requisite "understanding" or "willful participation" necessary to establish liability …

The summary judgment evidence regarding the existence of a civil conspiracy, and Renee Dyken as a conspirator, is clearly disputed by Renee Dyken and the Trustee. Movant Renee Dyken argues that her actions were taken based on the advice of a financial advisor for her "personal need for asset protection," without any knowledge of Jason Dyken's business liabilities, guarantees, financial troubles, etc.

However, when the facts are viewed in the light most favorable to the non-movant Trustee, **although not very strong or convincing to the undersigned**, there is more than speculation and conjecture present. Notably, as emphasized by the non-movant Trustee, the relationship between Renee Dyken and Jason Dyken (husband-wife), the surrounding circumstances and timing of the creation of the Trust, and the surrounding circumstances and timing of the transfer of assets thereto, collectively could *suggest* concerted action to a reasonable factfinder. Such a determination is for the factfinder, rather than the undersigned on summary judgment. "The jury is to determine whether it [a conspiracy] exists, and the extent of it, from the conduct of the parties and all the testimony in the case." Huckleberry, 503 So.2d at 1211 ("The wide latitude given to the factfinder in determining ultimate facts from the totality of the circumstances and any reasonable inferences therefrom, particularly in claims of this nature [conspiracy], dictates our holding that the trial court erred in granting summary judgment …[]"). See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 176 (1970) ("[t]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide[]"). Thus, Renee Dyken's motion for summary judgment, due to a lack of evidence, is **DENIED.**

**IV.     Conclusion**

Accordingly, it is **ORDERED** that Renee Dyken's motion for summary judgment (Doc. 260-262) is: 1) **DENIED** as to the "stand-alone" conspiracy claim; and 2) **DENIED** as to a lack of evidence.

**DONE** and **ORDERED** this the **28th** day of **June 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**